**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MARIA ARON,**

                              **Plaintiff,**

                                                                          **3:13-CV-0883**

          **-against-**

**CARL F. BECKER, in his official capacity as the**
**pistol licensing officer of Delaware County, New**
**York, in his official administrative capacity as the**
**County Judge of Delaware County, and in his individual**
**capacity; CHRISTA SCHAFER, Clerk, Delaware**
**County Board of Supervisors, New York, in her official**
**and individual capacities; JOSEPH EISEL, Chairman,**
**Delaware County Board of Supervisors, New York, in**
**his official and individual capacities; SHARON O'DELL,**
**County Clerk, Delaware County, New York, in her official**
**and individual capacities; MARILYN L. OLSEN, Pistol**
**Clerk, Delaware County, New York, in her official and**
**individual capacities; RICHARD NORTHRUP, in his**
**official capacity as Delaware County District Attorney;**
**STATE OF NEW YORK;  ANDREW CUOMO, in his**
**official capacity as Governor and Chief Executive Officer**
**of the State of New York,**

                              **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                              **DECISION & ORDER**

**I.     INTRODUCTION**

          Plaintiff Maria Aron ("Plaintiff") commenced this action against the Hon. Carl F.

Becker, County Judge of Delaware County, New York  ("Judge Becker"), the State of New

York ("New York"), New York Governor Andrew Cuomo ("Governor Cuomo") (collectively

"the State Defendants"); Christa Schafer, Clerk, Delaware County Board of Supervisors ("Schafer"), Joseph Eisel, Chairman, Delaware County Board of Supervisors ("Eisel"), Sharon O'Dell, County Clerk, Delaware County ("O'Dell"), Marilyn L. Olsen, Pistol Clerk, Delaware County ("Olsen"), and Richard Northrup, Delaware County District Attorney ("Northrup") (collectively "the County Defendants").[1]

In a convoluted Complaint, Plaintiff brings what she identifies as eight individual Causes of Action in connection with the events surrounding the denial of her pistol permit application. Currently pending are separate motions by the State Defendants and County Defendants to dismiss the Complaint in its entirety, see dkt. # 13; dkt. # 17, and a motion by Plaintiff to supplement the Complaint. See dkt. # 23. For the reasons that follow the State Defendants' motion (dkt. # 13) is GRANTED, the County Defendants' motion (dkt. # 17) is GRANTED, and Plaintiff's motion to supplement the complaint (dkt. # 23) is DENIED.

## II.    BACKGROUND[2]

On June 28, 2012, Plaintiff had foot surgery which resulted in a period of disability requiring in-home care from April through September, and caused her to require a walker or crutches during movement. Compl. at ¶ 19. Also, Plaintiff's home is located in a remote region of Delaware County and is frequented by black bears, coyotes and coy dogs. Id. at ¶¶ 18, 20. In addition, burglaries had taken place in the area near Plaintiff's home, which

---

[1]Plaintiff asserts in paragraph 76(2) of the Complaint that Porter Kirkwood, the Delaware County Attorney, is a defendant in this action. However, Kirkwood is not named in the caption of the Complaint or in the list of defendants in the Complaint at paragraphs 5-17; no summons was issued for Kirkwood, see Dkt. No. 2; and Plaintiff's affidavit of service of the summonses does not indicate that a summons was served on Kirkwood. Thus, because personal jurisdiction does not appear to have been obtained over Kirkwood, the Court does not treat him as a defendant.

[2]For purposes of this motion, the factual allegations (not the numerous legal conclusions) contained in the Complaint are deemed to be true.

caused Plaintiff to become concerned for her safety. Id. at ¶¶ 21-22.  In July 2012 Plaintiff applied for a pistol permit.

Plaintiff was provided "a stack of papers to fill out including a questionnaire that indicated that Plaintiff had to provide four affidavits from people who knew Plaintiff for a number of years," which she completed and filed with the Delaware County Pistol Clerk. Id. at ¶¶ 23-24.  Plaintiff also had to be fingerprinted.  Id. at ¶¶ 24-25.

After setting up an appointment to have her fingerprints taken, Plaintiff went to the Pistol Clerk's office located in the Delaware County Courthouse ("Courthouse").  She was told that the fingerprinting was done in the Delhi Village Police Department, located in a building behind the Courthouse "on the second floor, assessable through a non–descript door and not the main entrance to the Police Department or to the Village Hall." Id. at ¶ 29. Once at the Police Department, Plaintiff was told that the person "who was supposed to conduct the fingerprinting did not show up." Id. 31.  Plaintiff felt "frustrated with the discourtesy and lack of accommodation in the pistol clerk's office as to appointments and notification of cancellations of fingerprinting." Id. ¶ 32.  "During the second fingerprinting appointment individual [*sic*] responsible for fingerprinting simply did not show up." Id. ¶ 34. On Plaintiff's third attempt, the fingerprinting was accomplished and Plaintiff paid the filing and fingerprinting fees "but received an extremely substandard service by the Pistol Clerk's office and its subcontractors in charge of fingerprinting and the money was never refunded." Id. ¶ 36.

On June 18, 2013, Plaintiff received an "insultingly short 'letter' decision" from Judge Becker denying her pistol permit application. Id. at ¶ 39.  The letter states:

Today I am denying your Pistol Permit Application. I have received a number of

3

complaints about your behavior in and around the Delaware County Clerk's Office in connection with your efforts to gain access to the building and your argumentative nature when dealing with the County Clerk's staff.

Your aggressive and argumentative nature as revealed by these complaints indicates to me that you do not have the good judgment necessary to hold a Pistol Permit.

Accordingly, your Application has been denied.

Compl. Ex. 1.

Plaintiff contends that she "never engaged in any aggressive discussions with

personnel of the County Court building." Compl. ¶ 43.  She does assert, however:

> On one of the three occasions when Plaintiff arrived for fingerprinting and could not find the location of the fingerprinting, and when Plaintiff crossed the road back from the Delhi Village Police building to the courthouse ... where the pistol clerk's office is located, she approached the courthouse from the back and attempted to enter through the back door. The door was locked, but through the glass door Plaintiff could see two females up at a desk and thought they were local employees. Plaintiff waived her hands to them and with her lips articulated as distinctly as she could "where do I need to go?" The two females motioned Plaintiff away back towards the police building. Plaintiff does not know the personnel of the County Office or of the courthouse generally, and cannot tell whether these two females even work in the courthouse, because, on her later inquiry and excursion around the courthouse with her attorney, she learnt [*sic*] that the access point where she was trying to access the building led up to the archive of the County Clerk's office which is open to the public, and a desk that she saw through the glass door was also a desk where member [*sic*] of the public could use to review the records of the County Clerk's office. The two females with whom Plaintiff interacted could not possibly hear what she was saying, as Plaintiff was articulating "where should I go?" through a locked glass door, up a long flight of stairs, and the females were more or less deep into the room. Plaintiff otherwise did not have any other situations where she "argued" with any personnel inside the [Courthouse] or at the Delhi Village Police.

Id. ¶¶ 44-50.

However, she also asserts:

Defendant Becker did not know Plaintiff personally when he ruled against her. It appears that Defendant Becker punished Plaintiff with denying to her her enumerated constitutional right to bear arms in her own home, for her own self-defense, because Plaintiff criticized the court/County Clerk's personnel and, through that personnel, Plaintiff criticized Defendant Becker himself for failure to establish

proper policies in the courthouse to provide to her reasonable accommodations under the ADA.

Id. ¶¶ 57-58.

At the end of June 2013, Plaintiff retained her current counsel, Tatiana Neroni, Esq. Id. ¶ 62. Plaintiff and Neroni went to the Courthouse to "retrace" Plaintiff's routes in her attempt to obtain a pistol permit, and to obtain "a copy of the records upon which Defendant Becker relied" in denying Plaintiff's pistol permit application. Id. ¶¶ 63-66. The two asked Defendant Marilyn Olsen, Delaware County Pistol Clerk, for the records but were told that she could not give them the records without permission from Judge Becker. Id. ¶ 67. Olson recommended that the two talk to County Court Clerk Kelly Sanfilippo. Id. ¶ 68. Sanfilippo supposedly went to speak with Judge Becker and, upon returning, indicated that Judge Becker directed Plaintiff or her counsel to file a Freedom of Information Law ("FOIL") request to gain access to the file. Id. ¶ 73; see N. Y. Pub. Off. L. § 84 *et seq.*. Plaintiff's counsel filed a FOIL request that same day, but, on July, 9, 2013, received a letter from Defendant Christa Schafer, the Delaware County Board of Supervisors Record Access Officer denying this request. Compl. Ex. 3.[3]

---

[3]This letter indicated:

> Your Freedom of Information Law letter sent to the Delaware County Pistol Clerk has been referred to me for response as Records Access Officer.
>
> This letter is to inform you that your request is denied as the documents cannot be obtained through the Freedom of Information Law [see, Pub. Off. Law §87 (2)(a)].
>
> If you are dissatisfied with this decision, you may appeal the denial of your FOIL request within 30 business days, in accordance with Section 89(4)(a) of the Public Officers Law and NYS regulations at 18 NYCRR Part 340. Section 340.9(b) of the regulations states that an appeal must be mailed or submitted to the Appeals Officer, James Eisel, Sr. within 30 business days after the receipt of denial of access to the requested records. Pursuant to Public Officers Law Section 89(4), and 18 NYCRR Part 340.9(c)3 the Appeals Officer will issue a written decision within ten business days of receipt of a timely appeal.

(continued...)

After receiving the denial, Plaintiff's counsel spoke to the "substitute" Pistol Clerk about the FOIL request, who referred her to the County Clerk, Defendant Sharon O'Dell. Compl. ¶ 76. O'Dell referred counsel to County Attorney Porter Kirkwood who, O'Dell believed, directed that Plaintiff's FOIL requests be denied. Id. Plaintiff's counsel spoke with Kirkwood on July 16, 2013 in the Courthouse. Kirkwood "insisted that the Freedom of Information Law (FOIL) is the only way of getting access to Plaintiff's file and that no other procedure to get access to the file exist[ed] in Delaware County, but did not deny that the denial of the FOIL requests was advised by him." Id. Plaintiff then filed an administrative appeal of the denial of the FOIL request with Defendant Joseph Eisel, the Chairman of the Board of Supervisors of Delaware County. Id.

The administrative appeal was denied by James E. Eisel, Sr., Records Access Appeals Officer of the Delaware County Board of Supervisors. Id. ¶ 76; Compl. ex. 5.[4]

---

[3](...continued)

If you have any questions, please do not hesitate to contact me.

Compl. Ex. 3.

[4]This provided:

Please be advised that I am in receipt of your letter dated July 15, 2013, appealing the July 9, 2013 denial of your FOIL request by the Delaware County Records Access Officer.

Your initial request was addressed to the Pistol Clerk and sought "**** access to the full file of Ms. Aron ***". The Records Access Officer denied your request because the records you seek are not subject to a FOIL request as they are specifically exempt from disclosure under State Law. [See Public Officers Law §87 (2)(a)].

After reviewing your original request as well as your submission on appeal, I have determined that the Delaware County Access Officer correctly denied your FOIL request and I hereby affirm that determination. Specifically, I find that the records you have requested are exempt from disclosure under Public Officers Law §87 (2)(a) because under New York State Penal -Law §400.00 (5) "[t]he name and address of any person to whom an application for any license has been granted shall be a public record.[']

(continued...)

Because Plaintiff felt she was being given a "run-around" by Delaware County officials, and due to her belief that she "was in continued danger from the wildlife and from the potential criminals who may target her home while she is defenseless," Plaintiff "decided not to wait until the decision of the Board of Supervisor[s] and to file a lawsuit in federal court" instead. Compl. ¶¶ 76-77.

Plaintiff's Complaint is hardly the model of clarity and fails to comply with Rule 8(a)(2) because it does not contain a short and plain statement of the claims showing that the pleader is entitled to relief. Rather, many of the enumerated "Causes of Action" contain what appear to be several claims against various defendants.

The "**First Cause of Action**" is brought against O'Dell, Olsen, Becker and Eisel. It primarily alleges violations of Title II of the Americans with Disabilities Act ("ADA") related to the physical and procedural difficulties Plaintiff purportedly had in connection with her pistol permit application. Although the header to this Cause of Action also mentions "Due Process" and "Plaintiff's Right of Access to Courts," none of the allegations supporting the First Cause of Action present claims under the Fourteenth Amendment or the First Amendment. Plaintiff seeks an injunction requiring the defendants named in this Cause of Action "to establish ADA-Complaint procedures for physically disabled pistol permit applicants," and actual, special, nominal and punitive damages.

The "**Second Cause of Action**" is brought "[a]gainst all County Defendants with the

---

[4](...continued)
In this case, no license has been granted and, even if one had been granted, only the name and address of the grantee would be a public record subject to FOIL.

Accordingly, your appeal is denied in its entirety.

Compl. Ex. 5.

exception of Defendant Northrup." Plaintiff contends that these defendants "failed to properly train and supervise its officers and employees responsible for processing and issuance of pistol permits to all individuals, and especially to individuals with disabilities;" that these defendants "failed to establish policies insuring compliance with the U.S. Constitution in issuing state pistol permits;" that Defendant Becker "used his power to deliberately create obstacles for the innocent Plaintiff in access to her records and . . . to courts because of who she hired as an attorney,[5] without regard as to what kind of injury the lack of a pistol permit may cause Plaintiff;" and, that these defendants failed to properly process Plaintiff's request for information and to access her pistol permit file. In this Cause of Action, Plaintiff seeks actual damages.

The "**Third Cause of Action**" is brought "[a]gainst all Defendants." In this Cause of Action Plaintiff alleges that "Criminal Law [*sic*] § 400.00 governing pistol permits is unconstitutional as vague, over-broad and allowing arbitrary enforcement in its sections allowing denial of pistol permits 'for good cause', without any additional legislative guidelines to the licensing officer, and requiring 'good moral character', an extremely subjective determination, of the applicant, also without any legislative guidance to the pistol licensing officer as to how to make a determination as to that criteria." Plaintiff seeks a judgment enjoining Northrup and Cuomo from enforcing N.Y. Penal Law § 400.00 and declaring that N.Y. Penal Law § 400.00 is unconstitutionally over-broad and vague.

The "**Fourth Cause of Action**" is brought "[a]gainst all Delaware County Defendants

---

[5]The State Defendant's argue that "[t]his action is an unfortunate episode in an aggressive campaign of frivolous litigation by plaintiff's counsel (and counsel's husband) against Judge Becker. *E.g. Neroni v. Becker, et al*, 2013 U.S. Dist. LEXIS 130335 NDNY 09/12/13); *Neroni v. Grannis, et al*, 2013 U.S. Dist. LEXIS 39281 (NDNY 03/21/13); *Neroni v. Becker, et al*, 2012 U.S. Dist. LEXIS 180637 (NDNY 12/21/12); Neroni v. Becker, et al, 2012 U.S. Dist. LEXIS 110140 (NDNY 08/07/12)." State Defs' MOL, p. 3.

with the exception of Defendant Northrup." Plaintiff makes allegations that she contends demonstrate a Second Amendment violation by Judge Becker arising from his denial of Plaintiff's pistol permit; a failure of Delaware County to "properly train or supervise Carl F. Becker as its pistol licensing officer;" a violation by Judge Becker "of Plaintiff's rights during investigation of her pistol permit application;" a claim of First Amendment retaliation by Judge Becker "based on Plaintiff's alleged criticism of lack of proper procedures securing proper access to the courthouse by disabled individuals" and for "hiring Tatiana Neroni as her attorney;" a constitutional violation by Judge Becker for "interfering with Plaintiff's access to court to redress the denial of pistol permit . . . [by the] refusal to give her access to the records that were the basis of such a denial;" a claim of some sort against Judge Becker for his "spiteful direction to the Plaintiff to utilize a futile procedure to get access to her records under FOIL;" a claim against Judge Becker for his "deliberate usurpation of power of Delaware County pistol clerk and County Clerk in making decisions as to access to files of Delaware County in order to deny to Plaintiff her constitutional right of access to the records used by Judge Becker to deny her an enumerated constitutional right;" a claim against Judge Becker "for creating in Delaware County the rule of Defendant Becker instead of the rule of law, under the color of the power granted to Defendant Becker as the County Judge;" a claim against Judge Becker "for discriminating against Plaintiff on the basis of her gender, age and disability and for her exercise of her First Amendment rights and because she dared to criticize Delaware County, its officers and employees, including Defendant Becker himself for failure to provide her with reasonable accommodations under [the] Americans with Disabilities Act in the Courthouse . . . where the office of Delaware County Pistol Clerk is located, and in navigation back and forth to the locations where

fingerprinting was scheduled;" and a claim against Judge Becker "for deliberately stalling Plaintiff's lawsuit and interfering with their access to courts because of Defendant Becker's belief that he is the law onto [*sic*] himself in Delaware County who can dictate the rules of behavior to all County officials, no matter whether they comply with the law or not, and because of his personal hostility against Plaintiff and her counsel."  Plaintiff seeks actual damages from "Delaware County" and $12,000,000.00 for "actual, nominal, special and punitive damages from Judge Becker.

The "**Sixth Cause of Action**"[6] is brought against all defendants. It alleges that Plaintiff was subjected to a Fourteenth Amendment Equal Protection violation because pistol permit applications in Delaware County are decided by a County Judge and thus are appealable via N.Y. CPLR Article 78 to the Appellate Division of the New York State Supreme Court, whereas pistol permits decided in counties where a local police official decides the pistol permit applications are appealed *first* to the New York State Supreme Court *and then* to the Appellate Division.  Plaintiff seemingly contends that her rights under the Equal Protection Clause were violated because she was denied appellate review before the New York State Supreme Court due to the county in which he resided.  She seeks a Judgment declaring "that no matter whether the pistol licensing officer is or is not a judge, his functions in reviewing and deciding pistol permit applications are still administrative and not judicial and should be subject to the exact same procedure of review in state courts without regard to the employment status of the pistol licensing officer as judge."

In the "**Seventh Cause of Action**," Plaintiff contends that the New York CPLR Article

---

[6] There is no "Fifth Cause of Action" in the Complaint. See Compl. at ¶¶ 115-116 (Fourth Cause of Action followed by Sixth Cause of Action).

78 procedure is constitutionally deficient because it fails to apply the correct standard of review for pistol permit applications that have been denied. Plaintiff seeks a judgment declaring that New York CPLR Article 78 proceedings "are unconstitutional as applied to denials of pistol permits;" enjoining the use of Article 78 proceedings; directing New York to "comply" with constitutional requirements; directing that Article 78 proceedings cannot be used until New York amends Article 78; requiring that all aggrieved individuals seek review through the federal courts until Article 78 is amended; and appointing a federal monitor to ensure compliance with the sought-after judgment.

In the "**Eighth Cause of Action**," Plaintiff contends that the denial of her pistol permit application constituted a violation of her Second Amendment rights, and that she was denied a "due process right guaranteed to her by the 1st Amendment of the U.S. Constitution, petitions clause, as well as by the Due Process [*sic*] of the 5th and 14th Amendment [*sic*] and by the Equal Protection Clause of the 14th Amendment, to seek redress of that denial, and to have access to the file, as any other appellant would do, to provide the record upon which the denial was made, to the court where she should seek redress of pistol permit denial." Plaintiff seeks actual, special, nominal, and punitive damages; a judgment declaring that "New York State and Delaware County lack constitutionally required procedures ensuring access of aggrieved pistol permit applicants to the records utilized by pistol licensing officers to deny their permits;" and an injunction requiring Olsen, O'Dell, Becker, Eisel, and the State of New York "to establish appropriate procedures of access to their records by the aggrieved pistol permit applicants to allow them access to courts to redress the denials of pistol permits."

11

Plaintiff also presents a "**Supplemental Cause of Action**" in the Complaint brought "under New York CPLR Article 78" against "Delaware County" and Judge Becker. She asks this Court to "overturn Defendant Becker's letter decision of June 18, 2013 as arbitrary and capricious and for costs, disbursements and counsel fees against the County and against Defendant Becker personally." Compl., ¶ 152.

For her cross-motion, Plaintiff seeks to file a "Supplemental Complaint." <u>See</u> dkt. # 23-6. The proposed Supplemental Complaint names only Judge Becker (in his individual and official capcities), Delaware District Attorney Northrup (in his official capacity), the State of New York, and Governor Cuomo (in his official capacity) as defendants. The "Statement of Facts" in the Supplemental Complaint alleges that, in October of 2013, Judge Becker granted a pistol permit to an individual for whom Plaintiff had given a character reference. Plaintiff contends:

> 15. Thus, Plaintiff's judgment was good enough to support the granting of a pistol permit to a third party, but was not good enough to get her own pistol permit.
>
> 16. Such a determination by Defendant Becker about the same person on practically the same issue does not make any sense and shows that the "character" provision of Penal Law 400.00 is unconstitutionally overbroad and allows arbitrary enforcement.
>
> 17. Thus, Plaintiff seeks injunctive relief against Defendant Becker, Delaware County,[7] Defendant Northrup, the enforcer of penal laws in Delaware County, Defendant Cuomo, the Chief Executive Officer in the State of New York and the State of New York against enforcement of the unconstitutionally vague provision of Penal Law 400.00 allowing denial of pistol permits on a whim of the licensing officer.

Prop. Suppl. Compl.

Plaintiff also alleges that in August of 2013, an armed man committed a potentially

---

[7] Delaware County is not listed as a defendant in the caption or in the "Parties" section of the proposed Supplemental Complaint.

deadly home invasion near Plaintiff's home resulting in a two-day "complete lockdown" in the Town in which she resides. Plaintiff contends that she is "currently afraid for her life while remaining without a pistol permit for protection," has "paid the required pistol permit fee and [undergone] all the required procedures," "neither has a criminal history nor has been adjudicated a mentally incompetent or having a dangerous mental illness, and there is no reason to deny her an enumerated constitutional right." Id. ¶¶ 27, 29.  Therefore,

> 30. Plaintiff requests the federal court to void the administrative determination of Defendant Becker pertaining to Plaintiff's allegedly "argumentative and judgmental nature" as being irrelevant to the merits of her pistol license application and void/unconstitutional and to direct Delaware County to issue a premises pistol permit to the Plaintiff in accordance with her enumerated constitutional right.

> 31. Plaintiff requests a declaratory judgment against Defendants Becker, Delaware County District Attorney, Defendant Cuomo and Defendant the State of New York declaring the "character" provision of Penal Law 400.00 unconstitutional on its face and as applied to the Plaintiff's situation, as overbroad and allowing arbitrary enforcement, reaching protected conduct such as criticism of the government, and resulting in an unreasonable denial of Plaintiff's enumerated constitutional right.

> 32. Plaintiff invokes supplemental jurisdiction 28 U.S.C. 1367, and requests, pursuant to Article 78 of New York State Civil Practice Law and Rules, a finding that Defendant Becker's determination that because of Plaintiff's alleged "judgmental and argumentative nature" she is not entitled to protect herself in her home with a firearm, as combined with Defendant Becker's later determination that Plaintiff's nature does not prevent her from supporting a pistol license application of another, is arbitrary and capricious, and to reverse that determination and direct the administrative pistol licensing officer to issue a pistol license to the Plaintiff, in compliance with the U.S. Constitution.

Id.

## II.    STANDARDS OF REVIEW

Defendants move to dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 12(c), and Plaintiff moves to supplement her pleading, presumably under Fed. R. Civ. P. 15(d).   The following standards of review apply.

13

### A. Rule 12(b)(1)

A motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(1) challenges the subject matter jurisdiction of the Court to address a case or certain claims in the case. A case is to be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate it. Makarova v. United States, 201 F. 3d 110, 113 (2d Cir. 2000). A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. See Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002); see also Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996).

### B. Rule 12(b)(6)

In reviewing the sufficiency of a complaint under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n. 1 (2002). However, a court may disregard those pleadings that are "no more than conclusions" and must determine whether the remaining factual allegations "plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 663–64 (2009). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." Id. at 678. Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. at 678.

A complaint does not suffice if it merely "tenders naked assertions devoid of further factual enhancement." Id. (internal quotation marks and alterations omitted). As indicated, it requires factual allegations that plausibly give rise to an entitlement to relief, and plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. 557) (internal quotations omitted).  Thus, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations, internal quotation marks, and alterations omitted).  A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

### C.  Rule 12(c)

The standard pursuant to Fed. R. Civ. P. 12(c) is identical to that under Rule 12(b)(6). Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001).

### D.  Rule 15(d)

Rule 15(d) requires a party to obtain permission of the Court, by motion, to "serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Fed. R. Civ. P. 15(d).  Like with a motion to amend pursuant to Fed. R. Civ. P. 15(a), district courts have discretion to grant leave under Rule 15(d), and do so freely absent bad faith, prejudice to a party, or futility of the amendment. See Quaratino v. Tiffany & Co., 71 F.3d 58, 66 (2d Cir.

1995); see also Foman v. Davis, 371 U.S. 178, 182 (1962).

## III. DISCUSSION

When a plaintiff files a motion to amend a complaint in response to a dismissal motion, the Court has the option to address the amendment motion first to see whether the complaint, if amended or supplemented, is substantively sufficient. See Hamzik v. Office for People with Developmental Disabilities, 859 F. Supp.2d 265, 276 n. 9 (N.D.N.Y. 2012). If amendment or supplementation is allowed, the Court applies the well-settled rule that an amended or supplemented complaint supersedes in all respects the original. See Pacific Bell Telephone Co. v. Linkline Communications, Inc., 555 U.S. 438, 456 n. 4 (2009)("Normally, an amended complaint supersedes the original complaint.")(citing 6 C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE § 1476, pp. 556–557 (2d ed.1990)); Dluhos v. Floating & Abandoned Vessel, 162 F.3d 63, 68 (2d Cir. 1998) ("[I]t is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect."); N.D.N.Y. L.R. 7.1(a)(4)("**Motions to Amend or Supplement Pleadings . . . .** A party moving to amend a pleading pursuant to Fed. R. Civ. P. . . . 15 . . . must attach an unsigned copy of the proposed amended pleading to its motion papers. Except if the Court otherwise orders, the proposed amended pleading must be a complete pleading, which will supersede the original pleading in all respects. A party shall not incorporate any portion of its prior pleading into the proposed amended pleading by reference.")(underscoring added).

Plaintiff's proposed Supplemental Complaint excludes a number of parties and causes of action in the original Complaint. Ordinarily, the Court would deem these parties

16

and causes of action abandoned and proceed to determine only whether the allegations in the new pleading were legally sufficient against the defendants therein named. But in Plaintiff's memorandum of law submitted *with* her cross-motion to file the Supplemental Complaint, she argues against dismissal of parties and causes of action that are not included in the proposed Supplemental Complaint. Whether this is because of Plaintiff's counsel's inexperience or ignorance of the law relative to amended and supplemented pleadings, the Court will first address the sufficiency of the allegations in the Complaint and then determine whether supplementation will be allowed. This procedure will provide the most complete substantive adjudication of the issues raised in this matter which, in light of the history of litigation involving Judge Becker and Plaintiff's counsel, appears to be required.

### a. State Defendants' Motion

#### 1. Judicial Immunity

The State Defendants argue that any claims against Judge Becker in connection with the pistol permit application are barred by absolute judicial immunity. Plaintiff argues that absolute judicial immunity does not apply because Judge Becker did not perform a judicial function during the pistol permit process. For the reasons that follow, the State Defendants' motion is granted with regard to all claims brought against Judge Becker in his individual capacity concerning his conduct in relation to Plaintiff's pistol permit application. See Neroni v. Coccoma, 2014 WL 2532482 at *6, n. 13 (N.D.N.Y. June 5, 2014).[8]

---

[8]As Chief Judge Sharpe recently noted: "Judicial immunity shields judges from suit to the extent that they are sued in their individual capacities. *See Martinez v. Queens Cnty. Dist. Attorney*, No. 12–CV–06262, 2014 WL 1011054, at *8 n.8 (E.D.N.Y. Mar. 17, 2014); *McKnight v. Middleton*, 699 F. Supp.2d 507, 521–25 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011). [T]he Eleventh Amendment, on the other hand, shields
(continued...)

17

It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions. *See, e.g., Mireles v. Waco*, 502 U.S. 9, 9–10, 112 S. Ct. 286, 116 L.Ed.2d 9 (1991); *Forrester v. White*, 484 U.S. 219, 225–26, 108 S. Ct. 538, 98 L. Ed.2d 555 (1988). Such judicial immunity is conferred in order to insure "that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347, 20 L. Ed. 646 (1871). Thus, even allegations of bad faith or malice cannot overcome judicial immunity. *See, e.g., Pierson v. Ray*, 386 U.S. 547, 554, 87 S. Ct. 1213, 18 L. Ed.2d 288 (1967); *Tucker v. Outwater*, 118 F.3d 930, 932 (2d Cir.), *cert. denied*, 522 U.S. 997, 118 S. Ct. 562, 139 L. Ed.2d 402 (1997). In addition, as amended in 1996, § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009).

Judicial immunity does not apply when the judge takes action "outside" his judicial capacity, and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." Mireles, 502 U.S. at 9-10; see Bliven, 579 F.3d at 209. However, "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." Stump v. Sparkman, 435 U.S. 349, 356 (1978).

New York Penal Law § 400.00(1) provides in pertinent part that to be eligible for a license to carry or posses a firearm, a "licensing officer" must determine, after an investigation by the local police authority, that the applicant meets a number of criteria, including being of "good moral character." N.Y. Penal L. § 400.00(1) & (4). New York Penal Law § 265.00(10) defines a statutory "licensing officer" to mean:

in the city of New York the police commissioner of that city; in the county of Nassau the commissioner of police of that county; in the county of Suffolk the

---

[8](...continued)
judges from suit to the extent that they are sued in their official capacities. *Martinez*, 2014 WL 1011054, at *8 n.8." Neroni v. Coccoma, 2014 WL 2532482 at *6, n. 13 (N.D.N.Y. June 5, 2014). Eleventh Amendment immunity with regard to Judge Becker is addressed below.

sheriff of that county except in the towns of Babylon, Brookhaven, Huntington, Islip and Smithtown, the commissioner of police of that county; for the purposes of section 400.01 of this chapter the superintendent of state police; and elsewhere in the state a judge or justice of a court of record having his office in the county of issuance.

N.Y. Penal L. § 265.00(10).

As a County, Family, and Surrogate Court Judge, and as an Acting New York Supreme Court Justice, Judge Becker was a statutorily defined licensing officer. Simply stated, his status as a judge was the source of his authority to adjudicate individual pistol permit applications. Indeed, pursuant to New York Penal Law § 265.00(10), in Delaware County only a judge is deemed a "licensing officer" for purposes of issuing a pistol permit. But Plaintiff argues that even though Judge Becker's authority derives from his position as a judicial officer in Delaware County, the pistol permit process is administrative in nature and, therefore, absolute judicial immunity does not apply. Pl. MOL, pp. 2-5 (relying on Butz v. Economou, 438 U.S. 478 (1978)(examining whether officials in the U.S. Department of Agriculture were entitled to absolute immunity on claims brought by a registered futures commission merchant contending that defendants had wrongfully initiated administrative proceedings against him and his company) & DiBlasio v. Novello, 344 F. 3d 292 (2d Cir. 2003)(examining whether the NYS Dept. of Health Commissioner and the Director of the NYS Medical Fraud Unit of the Office of Medical Professional Conduct were entitled to absolute immunity on claims brought by a radiologist whose medical license was suspended)). The Court disagrees.

"In determining whether an act by a judge is 'judicial,' thereby warranting absolute immunity, we are to take a functional approach, for such 'immunity is justified and defined

19

by the *functions* it protects and serves, not by the person to whom it attaches.'" Bliven, 579

F.3d at 209-10 (quoting Forrester, 484 U.S. at 227)(emphasis in original)).  In this context,

the Supreme Court has "made clear that 'whether an act by a judge is a 'judicial' one

relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a

judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his

judicial capacity.'" Mireles, 502 U.S. at 12 (quoting Stump, 435 U.S. at 362).  "In employing

this functional analysis, the Supreme Court has generally concluded that acts arising out of,

or related to, individual cases before the judge are considered judicial in nature." Bliven,

579 F.3d at 210.  "This has included actions of  issuing a search warrant; directing court

officers to bring a particular attorney before the judge for a judicial proceeding; granting a

petition for sterilization; and disbarring an attorney as a sanction for the attorney's

contumacious conduct in connection with a particular case." Id. (citations omitted).  "The

fact that a proceeding is 'informal and *ex parte* . . . has not been thought to imply that an act

otherwise within a judge's lawful jurisdiction was deprived of its judicial character.'" Id.

(quoting Forrester, 484 U.S. at 227; and citing Stump, 435 U.S. at 363 n.12 (the fact "[t]hat

there were not two contending litigants did not make Judge Stump's act [in granting

mother's petition for sterilization of her "'somewhat retarded'" daughter] any less judicial")).

The Second Circuit has noted that "[t]he principal hallmark of the judicial function is a

decision in relation to a particular case." Id. at 211.

    In Cea v. Bradley, *et al.*, 1:02-CV-0448 (FJS)(DRH)(N.D.N.Y.), Judge Scullin applied

a functional analysis and found that New York State Supreme Court Justice Vincent Bradley

acted in his judicial capacity in a pistol permit revocation matter, thus entitling Judge Bradley

to absolute immunity on claims arising from that revocation proceeding. See id., 02/12/03

Memorandum, Decision and Order, dkt. # 36.  Judge Scullin wrote:

> In the present case, it is beyond doubt that Judge Bradley was acting in a judicial capacity when suspending/revoking plaintiff's pistol permit.  The suspension or revocation of a pistol permit is a function normally performed by a judge. Further, plaintiff, at the time his pistol permit was suspended and revoked, was dealing with Judge Bradley in his judicial capacity. Although Judge Bradley's actions may be considered administrative in nature, his authority to undertake such an "administrative act" stems from his status as a judge. It is untenable to suggest that an action, statutorily authorized by virtue of his status as a judge, was undertaken in a non-judicial capacity.

Id., pp. 5-6.

Judge Scullin's analysis of Judge Bradley's role applies equally to Judge Becker's

role in Plaintiff's pistol permit application matter.  As indicated above, determination of a

pistol permit application in Delaware County is a function necessarily performed by a judicial

officer.  N.Y. Penal L. § 400.00; § 265.00(10).  Further, in the context of the pistol permit

application, Plaintiff was dealing with Judge Becker in his judicial capacity.   Judge Becker's

function as a firearm licensing officer was to render a decision on Plaintiff's pistol permit

application.  By doing so, Judge Becker fulfilled the principal hallmark of judicial functioning.

Just as Judge Scullin found with regard to Judge Bradley, "[i]t is untenable to suggest

that an action, statutorily authorized by virtue of [Judge Becker's] status as a judge, was

undertaken in a non-judicial capacity." Cea, 1:02-CV-0448, 02/12/03 Memorandum,

Decision and Order, dkt. # 36 02/12/03 Memorandum, Decision and Order, p. 6.

Consequently, insofar as Plaintiff seeks money damages from Judge Becker arising from or

related to the pistol permit application matter, all such claims are barred by absolute judicial

immunity.  Insofar as Plaintiff seeks injunctive relief against Judge Becker, such relief is

statutorily barred. See 42 U.S.C. § 1983; Montero v. Travis, 171 F.3d 757, 761 (2d Cir.1999)(*per curiam*).  Accordingly, all claims against Judge Becker in his individual capacity arising from or related to the pistol permit application matter are dismissed with prejudice.[9]

### 2.  ADA Claims against Judge Becker

Plaintiff's American with Disabilities Act ("ADA") claims against Judge Becker must also be dismissed. It is well settled that individuals may not be held personally liable under the ADA. Garcia v. SUNY Health Sci., Ctr., of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001); see Rodriguez v. Rochester Genesee Regional Transp. Authority, 2014 WL 3819229, at *5 (W.D.N.Y. Aug. 04, 2014)("Plaintiff's federal claims against Dr. Tunaitis are dismissed with prejudice on grounds that the ADA does not provide for personal liability of individual defendants.")(citations omitted); Nicholas v. City of Binghamton, N.Y., 2012 WL 3261409, at *12 (N.D.N.Y. Aug. 8, 2012)("Because the ADA targets public entities, individuals cannot be named as defendants in their individual capacities.").  Further, Plaintiff has alleged nothing indicating that Judge Becker holds the authority to direct Delaware County officials to expend resources to renovate or otherwise modify physical structures of the Courthouse. The claims are dismissed with prejudice.[10]

---

[9]This includes any claim asserted in the Second, Third, Fourth, Sixth, Seventh, Eighth and Supplemental Causes of Action.

[10]In light of the clearly established law excluding individuals from liability under the ADA, and given the history of ligation involving Plaintiff's counsel and Judge Becker, the Court fails to comprehend how this claim could have been filed by counsel in good faith after a reasonable review of the law.

### 3. Sovereign Immunity

Next, the State Defendants move to dismiss the claims against the State of New York, and the official capacity claims against Governor Cuomo[11] and Judge Becker based upon sovereign immunity. Plaintiff argues that sovereign immunity does not bar the present action because she does not sue the State of New York or Governor Cuomo for money damages, and because she seeks prospective injunctive and declaratory relief "against State [*sic*] Defendants under Ex Parte Young." Pl. MOL, p. 22. For the reasons that follow, the State Defendants' motion in this regard is granted.

The Eleventh Amendment of the United States Constitution bars a suit in law or equity in federal court against a State absent the State's consent to such a suit or congressional abrogation of immunity. Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); see Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100 (1984); Green v. Mansour, 474 U.S. 64, 72-73 (1985). "[I]t is beyond dispute that the State of New York and its agencies have never consented to be sued in federal court." Dube v. State Univ. of N.Y., 900 F.2d 587, 594-95 (2d Cir. 1990), cert. denied, 501 U.S. 1211 (1991). Moreover, Congress did not abrogate New York's Eleventh Amendment immunity by enacting Section 1983. Quern v. Jordan, 440 U.S. 332, 343-45 (1979). In fact, the United States Supreme Court has held that the States, and their agencies, are not "persons" within the meaning of Section 1983. Will v. Michigan Dep't. of the State Police, 491 US 58, 71 (1989); Harris v. Mills, 572 F3d 66, 69-70 (2d Cir. 2009) (state agencies are not "persons" under section 1983). Accordingly, all claims against the State of New York are dismissed

---

[11]Governor Cuomo is sued only in his official capacity. See Compl., caption and ¶ 17.

with prejudice.

Eleventh Amendment immunity also extends to suits for damages against state officers in their official capacities. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66, 71 (1989)("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself." (internal citation omitted)); McNamara v. Kaye,  2008 WL 3836024, at *8 (E.D.N.Y. Aug. 13, 2008) ("[L]awsuits against state officers acting [in] their official capacity and lawsuits against state courts are considered to be lawsuits against the state.").  Accordingly, all claims for monetary damages against Governor Cuomo and Judge Becker in their official capacities are dismissed with prejudice.

A narrow exception to Eleventh Amendment immunity allows a federal court to issue an injunction against a state official in his official capacity who is acting contrary to federal law.  Ex Parte Young, 209 U.S. 123 (1908); see Pennhurst, 465 U.S. at 102; New York Health and Hospitals Corporation et al. v. Perales, 50 F.3d 129 (2d Cir. 1995).  This exception is a limited one, utilized only "when there is a specific conflict between the federal mandate and the state plan or practice that a federal right is implicated," Doe v. Pfrommer, 148 F. 3d 73, 80-81 (2d Cir. 1998), and is authorized to "vindicate the supremacy of [federal] law."  Ward v. Thomas, 207 F.3d 114, 119 (2d Cir. 2000).

Under the doctrine of  Ex Parte Young, a "plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that [her] complaint[:] (a) alleges an ongoing violation of federal law[;] and (b) seeks relief properly characterized as prospective." Clark v.

DiNapoli, 510 F. App'x 49, 51 (2d Cir. 2013)(internal quotation marks and citation omitted). The Supreme Court has held that "[i]n determining whether the doctrine of Ex Parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Verizon Maryland Inc. v. Public Serv. Comm. Of Maryland, 122 S. Ct. 1753, 1760 (2002) (quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296 (1997)(O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment). The inquiry "does not include an analysis of the merits of the claim." Id. at 1761. "Nevertheless, declaratory relief, while equitable in nature, is barred by the Eleventh Amendment 'when it would serve to declare only past actions in violation of federal law; retroactive declaratory relief cannot be properly characterized as prospective.'" Neroni v. Coccoma, 2014 WL 2532482 at *9 (N.D.N.Y. June 5, 2014)(quoting Kent v. New York, 2012 WL 6024998, at *7 (N.D.N.Y. Dec. 4, 2012) (internal quotation marks and citation omitted)).

### A. Judge Becker

As to Judge Becker, Plaintiff has not alleged viable claims seeking prospective equitable relief sufficient to invoke the doctrine of Ex Parte Young. In the First Cause of Action, Plaintiff seeks an injunction requiring Judge Becker (and other defendants) "to establish ADA-compliant procedures for physically disabled pistol permit applicants." For the reasons discussed above, Plaintiff has no viable ADA claim against Judge Becker and, therefore, no basis for equitable relief under the ADA.

In the Sixth Cause of Action Plaintiff contends that her Fourteenth Amendment Equal

Protection rights were violated because pistol permits in Delaware County are decided by a judge.  She seeks a judgment declaring "that no matter whether the pistol licensing officer is or is not a judge, his functions in reviewing and deciding pistol permit applications are still administrative and not judicial and should be subject to the exact same procedure of review in state courts without regard to the employment status of the pistol licensing officer as judge."  Even if this presented a legally cognizable Equal Protection Clause claim, it is the New York State Legislature via enactment of New York Penal Law §§ 400.00 and 265.00(10) that "caused" any Equal Protection violation, not Judge Becker.  Any claim against Judge Becker in this regard is patently frivolous and is dismissed with prejudice.

In the Seventh Cause of Action, Plaintiff seeks a judgment declaring that New York CPLR Article 78 proceedings "are unconstitutional as applied to denials of pistol permits;" enjoining the use of Article 78 proceedings; directing New York to "comply" with constitutional requirements; directing that Article 78 proceedings cannot be used until New York amends Article 78; requiring that all aggrieved individuals seek review through the federal courts until Article 78 is amended; and appointing a federal monitor to ensure compliance with the sought-after judgment.  For the same reason as discussed above with regard to the Sixth Cause of Action, the Seventh Cause of Action fails to state a viable claim for relief against Judge Becker and any such claim is dismissed as frivolous.

In the Eighth Cause of Action, Plaintiff seeks, *inter alia*, an injunction requiring various defendants including Judge Becker "to establish appropriate procedures of access to their records by the aggrieved pistol permit applicants to allow them access to courts to redress the denials of pistol permits."  Inasmuch as the procedures for access to records

following pistol permit denials are determined by statute (New York's FOIL and/or N.Y. CPLR Article 78), there is no basis for the sought-after relief from Judge Becker. Simply stated, New York state court judges have no control over the procedures implicated by these statutes. To the extent that Plaintiff contends that Judge Becker improperly applied the procedures in *her* case, the claim for "an injunction" is clearly a request for this Court to review her case. Her claim is non–prospective in nature and, thus, does not fall within the doctrine of <u>Ex Parte Young</u>. Any such claim against Judge Becker is dismissed with prejudice.

The Supplemental Cause of Action does not allege an ongoing violation of federal law to which the doctrine of <u>Ex Parte Young</u> could apply. Accordingly, the claim is dismissed as against Judge Becker in his official capacity.

## B. Governor Cuomo

"[A] state official may be joined as a defendant to a suit to restrain the enforcement of an allegedly unconstitutional statute if that official 'by virtue of his office has some connection with the enforcement of the act.'" <u>United States v. New York</u>, 2007 WL 951576, at *3 (N.D.N.Y. Mar. 27, 2007) (quoting <u>Ex Parte Young</u>, 209 U.S. 123, 157 (1908)); <u>see</u> <u>Mendez v. Heller</u>, 530 F.2d 457, 460 (2d Cir.1976). "With respect to [Governor Cuomo], the vast majority of courts to consider this issue have held that a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute." <u>Sabin v. Nelson</u>, 2014 WL 2945770, at *3 (N.D.N.Y. June 30, 2014)(interior quotation marks, alterations, and citations omitted); <u>but see</u> <u>Ass'n of Am. Med. Colls. v. Carey</u>, 482 F. Supp. 1358, 1363 (N.D.N.Y. 1980) (holding that the Governor's constitutional

27

duty to "take care that the laws are faithfully executed" is a sufficient basis to make him a proper party in a suit challenging a state statute). Inasmuch as Plaintiff has failed to "make any allegations whatsoever with respect to the Governor's role in enforcement of any of the statutes at issue, or with any acts taken pursuant thereto, the claims against Cuomo [can be] dismissed without prejudice." <u>Sabin</u>, 2014 WL 2945770, at *3 (citing <u>N.Y.S. Motor Truck Ass'n v. Pataki</u>, 2004 WL 2937803, at *12 (S.D.N.Y. Dec. 17, 2004) ("Since the complaint fails to allege that the Governor has any connection with the enforcement of the statute, other than his general duty to ensure the laws are faithfully executed, he is immune from suit even though the remedy sought here is only injunctive and declaratory relief."). Moreover, for the reasons discussed below, Plaintiff has no cognizable claims against New York and, therefore, no cognizable claim for equitable relief against Governor Cuomo in his official capacity.

### 4. Second Amendment Challenge

Plaintiff presents no legally viable Second Amendment challenge to New York's pistol permit regulations. The Second Amendment to the U.S. Constitution,[12] applicable to the states through the Fourteenth Amendment, <u>McDonald v. City of Chicago</u>, 130 S. Ct. 3020 (2010), provides an individual right to keep and bear arms. <u>District of Columbia v. Heller</u> 554 U.S. 570, 595 (2008). The Supreme Court recognized in <u>Heller</u>, "however, that the Second Amendment right to keep and bear arms '[i]s not unlimited, just as the First Amendment's right of free speech [i]s not.'" <u>Kwong v. Bloomberg</u>, 723 F.3d 160, 164 (2d

---

[12]The Second Amendment provides that, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

Cir. 2013)(quoting <u>Heller</u>, 554 U.S. at 595). Indeed, in <u>Heller</u> the Supreme Court stated that its decision should not call into question "longstanding prohibitions on the possession of firearms" by certain classes of persons, such as the mentally ill and convicted felons, and in certain places constituting security concerns. <u>Heller</u>, 554 U.S. at 626–27 & n. 26. Thus, the Supreme Court suggested that the core purpose of the right conferred by the Second Amendment was to permit "law-abiding, responsible citizens to use arms in defense of hearth and home." <u>Id.</u> at 635.

The Court must first determine the appropriate level of scrutiny to employ in examining the challenged pistol permit regulations under the Second Amendment.

> In *United States v. Decastro*, [682 F.3d 160 (2d Cir. 2012)], [the Second Circuit] held that the appropriate level of scrutiny under which a court reviews a statute or regulation in the Second Amendment context is determined by how substantially that statute or regulation burdens the exercise of one's Second Amendment rights. 682 F.3d at 164. [The Second Circuit] further explained that where the burden imposed by a regulation on firearms is a "marginal, incremental or even appreciable restraint on the right to keep and bear arms," it will not be subject to heightened scrutiny. *Id.* at 166 (emphasis supplied). "Rather, heightened scrutiny is triggered only by those restrictions that (like the complete prohibition on handguns struck down in *Heller*) operate as a substantial burden on the ability of law-abiding citizens to possess and use a firearm for self-defense (or for other lawful purposes)." *Id.* (emphasis supplied); *see also [Nordyke v. King,* 644 F.3d 776, 786 (9th Cir. 2011)*, aff'd in relevant part,* 681 F.3d 1041 (9th Cir.2012) (en banc)]* ("[O]nly regulations which substantially burden the right to keep and to bear arms trigger heightened scrutiny under the Second Amendment.").

<u>Kwong</u>, 723 F.3d at 167.

New York Penal Law Article 400 has long been recognized as "the exclusive statutory mechanism for the licensing of firearms in New York State." <u>O'Connor v. Scarpino</u>,

83 NY2d 919, 920 (1994); <u>see also</u> <u>Bach v. Pataki</u>, 408 F.3d 75, 91 (2d Cir. 2005),[13]

*overruled on other grounds by* <u>McDonald</u>, 130 S. Ct. at 3026.  Licenses are limited to

persons over twenty-one years of age, of good moral character, without a history of crime or

mental illness, and "concerning whom no good cause exists for the denial of the license."

PL § 400.00(1).  Licensing is a rigorous, local process that begins with the submission of a

signed and verified application to a local licensing officer.  <u>See</u> <u>Kachalsky v. County of</u>

<u>Westchester</u>, 701 F.3d 81, 87 (2d Cir. 2012);  PL § 400.00(3).  An applicant must

demonstrate compliance with certain statutory eligibility requirements and provide any facts

"as may be required to show the good character, competency and integrity of each person

or individual signing the application." PL § 400.00(3).  The application triggers an

investigation by local police who will examine issues such as the applicant's criminal history

and moral character.  <u>See</u> PL §400.00(1)-(4).  The investigating authority reports its results

to the licensing officer. <u>Id.</u>

> A licensing officer . . .  has broad discretion to grant or deny a permit under Penal
> Law § 400.00(1) (*see Matter of Fromson v. Nelson*, 178 A.D.2d 479, 479, 577
> N.Y.S.2d 417; *Matter of Covell v. Aison*, 153 A.D.2d 1001, 1002, 545 N.Y.S.2d 622,
> *lv. denied* 74 N.Y.2d 615, 549 N.Y.S.2d 960, 549 N.E.2d 151; *Matter of Anderson v.
> Mogavero*, 116 A.D.2d 885, 885, 498 N.Y.S.2d 201). Under section 400.00(4–a), the
> licensing officer must either deny the application for reasons specifically and
> concisely stated in writing or grant the application and issue the license applied for.

<u>Parker v. Randall</u>, 990 N.Y.S. 2d 402 (4th Dept. 2014).

"The officer may deny an application for any 'good cause,' . . . [including] where [the

---

[13]("New York regulates handguns primarily though Articles 265 and 400 of the Penal Law.  Article 265
creates a general ban on handgun possession, *see, e.g.*, N.Y. Penal Law §§ 265.01(1), 265.02(4), with
specific exemptions thereto, *see* N.Y. Penal Law § 265.20.  The exemption at issue here is a licensed use
exemption defined in Article 400: "[the p]ossession of a pistol or revolver by a person to whom a license
therefor has been issued." N.Y. Penal Law §§ 265.20(3) (referencing sections 400.00 and 400.01).").

licensing officer finds] an applicant's personal background troubling." <u>Bach</u>, 408 F. 3d at 79-80 (citing N.Y. Penal Law § 400.00(1)(g); <u>Bando v. Sullivan</u>, 290 A.D.2d 691, 691–92, 735 N.Y.S.2d 660 (3d Dep't 2002); <u>Vale v. Eidens</u>, 290 A.D.2d 612, 613, 735 N.Y.S.2d 650 (3d Dep't 2002); <u>Fromson v. Nelson</u>, 178 A.D.2d 479, 479, 577 N.Y.S.2d 417 (2d Dep't 1991)).

An aggrieved pistol permit applicant has well-established appellate recourse under N.Y. CPLR Article 78. <u>See</u>, <u>e.g.</u>, <u>Parker</u>, 990 N.Y.S. 2d at 402; <u>see also</u> <u>Kachalsky v. Cacace, et al.</u>, 817 F. Supp. 2d 235 (S.D.N.Y. Sept. 2, 2011); <u>Kachalsky v. Cacace</u>, 65 AD3d 1045 (2nd Dept. 2009); <u>County of Westchester v. D'Ambrosio</u>, 244 AD2d 334 (2nd Dept. 1997). Under CPLR § 7804(e), a respondent judge or justice is required to file a certified copy of the record underlying the determination on the application, with a copy to the petitioner. Since such a proceeding seeks review of a determination by a justice of the N.Y. supreme court or a judge of a county court, under CPLR 506(b)(1) it must be brought in the Appellate Division. A licensing officer's decision will not be disturbed unless it is arbitrary and capricious. <u>See</u> <u>O'Brien v. Keegan</u>, 87 N.Y.2d 436, 439–40 (1996)(citing N.Y. Penal Law § 400.00).

New York's pistol permit regulations do not present a substantial burden on the core protection of self-defense inside hearth and home for law-abiding, responsible citizens. Rather, the applicable statutes burden only the narrow class of persons who are adjudged to lack the characteristics necessary for the safe possession of a handgun. Thus, the Court will apply intermediate scrutiny to determine whether the challenged provisions of New York's pistol permit regulations are substantially related to the governmental interests sought to be advanced by those regulations, and whether there is a reasonable fit between

31

the objective and the law.  See Osterweil v. Bartlett, 819 F. Supp.2d 72, 84 (N.D.N.Y.

2011)(applying intermediate scrutiny on claim challenging New York's pistol permit

regulations), vacated on other grounds, 738 F.3d 520 (2d Cir. 2013); see also Kachalsky v.

Cnty. of Westchester, 701 F.3d 81, 93–97 (2d Cir. 2012);[14] United States v. Marzzarella,

614 F.3d 85, 96-97 (3d Cir. 2010)(applying intermediate scrutiny to a federal law prohibiting

the possession of firearms with obliterated serial numbers); United States v. Skoien, 614

F.3d 638, 641 (7th Cir. 2010) (en banc)(applying intermediate scrutiny to a federal statute

prohibiting the possession of firearms by any person convicted of a misdemeanor crime of

domestic violence.); see also Kwong, 723 F.3d at 168.

Clearly, N.Y. Penal Law Article 400 was enacted to promote public safety and

prevent crime, and, as contemplated by Heller, to allow only law-abiding, responsible

citizens to possess pistols in defense of hearth and home.   Part of that regulation involves

restricting access to individuals who might not be trusted to use pistols safely and

responsibly.  New York,

> has a substantial and legitimate interest and indeed, a grave responsibility, in
> insuring the safety of the general public from individuals who, by their conduct, have
> shown themselves to be lacking the essential temperament or character which
> should be present in one entrusted with a dangerous instrument.

Pelose v. County Court of Westchester County, 384 N.Y.S.2d 499, 500, 53 A.D.2d 645 (2d

Dept. 1976), appeal dismissed 395 N.Y.S.2d 1028, 41 N.Y.2d 1008 (N.Y. 1977); see

---

[14]In Kachalsky, 701 F.3d at 93–97, the Second Circuit applied intermediate scrutiny to a statute that
required "proper cause" for the issuance of a "full-carry concealed-handgun license" because the statute did
"not burden the 'core' protection of self-defense."  Although not exactly on point because Kachalsky
concerned possession of a handgun in public where Second Amendment guarantees are not at their zenith,
id., the case is instructive because, as discussed above, the regulations in issue here do not present a
substantial burden on the core protection of self-defense inside hearth and home for law-abiding, responsible
citizens.

Kachalsky, 701 F.3d at 97 ("New York has substantial, indeed compelling, governmental interests in public safety and crime prevention."); see also Bach, 408 F.3d at 91 (noting that the State "has a substantial and legitimate interest ... in insuring the safety of the general public from individuals who, by their conduct, have shown themselves to be lacking the essential temperament or character which should be present in one entrusted with a dangerous instrument" (quotation marks omitted)); see also Osterweil, 819 F. Supp.2d at 85.[15]

> In the context of firearm regulation, the legislature is "far better equipped than the judiciary" to make sensitive public policy judgments (within constitutional limits) concerning the dangers in carrying firearms and the manner to combat those risks. *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 665, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). Thus, our role is only "to assure that, in formulating its judgments, [New York] has drawn reasonable inferences based on substantial evidence." *Id.* at 666, 114 S. Ct. 2445. Unlike strict scrutiny review, we are not required to ensure that the legislature's chosen means is "narrowly tailored" or the least restrictive available means to serve the stated governmental interest. To survive intermediate scrutiny, the fit between the challenged regulation need only be substantial, "not perfect." [United States v. Marzzarella, 614 F.3d 85, 97 (3d Cir. 2010)].

Kachalsky, 701 F.3d at 97.

---

[15]As Judge D'Agostino wrote in Osterweil,

[T]he harm caused by gun violence in this country has been well-documented, and government efforts to curtail this threat have a direct impact on domestic security. *See, e.g., BJS's Federal Justice Statistics Program, Department of Justice, Firearm Injury and Death from Crime, 1993–97*, available at http:// bjs. ojp. usdoj. gov/ content/ pub/ pdf/ fidc 9397. pdf (stating that of the 19.2 million incidents of nonfatal violent crime from 1993 through 1997, 28% were committed with a firearm); *BJS's Special Report, Weapon Use and Violent Crime (September 2003)*, available at http:// bjs. ojp. usdoj. gov/ index. cfm? ty= pbdetail& iid= 570 (finding that, between 1993 and 2001, firearms were used in 27% of robberies, 8% of assaults, and 3% of rapes and sexual assaults, and also that "U.S. residents were victims of crimes committed with firearms at a[n] annual average rate of 4 crimes per 1,000 persons age 12 or older"); see also Heller, 554 U.S. at 694–96, 128 S. Ct. 2783 (Breyer, J., dissenting) (discussing statistics related to gun violence). As such, the government objective promoted by these laws is not only "legitimate," *see Lewis v. United States*, 445 U.S. 55, 66, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), but also "important," *Clark*, 486 U.S. at 461, 108 S. Ct. 1910.

819 F. Supp.2d at 85.

New York Penal Law Article 400 substantially relates to the important governmental objective of ensuring that only law-abiding, responsible citizens are allowed to possess a handgun. The licensing officer's duty to examine an application and assess the applicant's character readily meets this requirement, and the requirements of Article 400 constitutes a reasonable fit between New York's objective and the law.  The Court finds that New York's handgun licensing requirements do not run afoul of the Second Amendment.  Any such claim brought by Plaintiff is dismissed.

### 5. Constitutional Vagueness Challenge

Plaintiff asserts that N.Y. Penal Law § 400.00 is unconstitutionally vague both as applied and on its face because it does not provide "clear guidance as to how to criteria [*sic*] of granting or denial of pistol permits to and enumerated federal constitutional right."  Pl. MOL, p. 18.  The Court disagrees.

"The Due Process Clause of the Fourteenth Amendment requires that laws be crafted with sufficient clarity to 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited' and to 'provide explicit standards for those who apply them.'" Betancourt v. Bloomberg, 448 F.3d 547, 552 (2d Cir. 2006)(quoting Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L. Ed.2d 222 (1972) and citing Smith v. Goguen, 415 U.S. 566, 572-73, 94 S. Ct. 1242, 39 L. Ed.2d 605 (1974) ("the due process doctrine of vagueness" "incorporates notions of fair notice or warning" and "requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent 'arbitrary and discriminatory enforcement'").

Regulations need not, however, achieve "meticulous specificity," which would come

at the cost of "flexibility and reasonable breadth." *Grayned*, 408 U.S. at 110, 92 S. Ct. 2294 (internal quotation marks omitted). "The degree of vagueness that the Constitution tolerates - as well as the relative importance of fair notice and fair enforcement - depends in part on the nature of the enactment." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S. Ct. 1186, 71 L. Ed.2d 362 (1982). For example, "economic regulation is subject to a less strict vagueness test" than is legislation regulating noncommercial conduct. *Id*. On the other hand, a greater degree of precision is required for enactments that provide for "criminal penalties because the consequences of imprecision are qualitatively" more severe. *Id*. at 498-99, 102 S. Ct. 1186. "[P]erhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights." *Id*. at 499, 102 S. Ct. 1186. If it does pose such a threat, "a more stringent vagueness test should apply." *Id*.

Betancourt, 448 F.3d at 552-53.

Facial vagueness challenges are disfavored, and are generally allowed only when a plaintiff asserts that a First Amendment freedom of expression violation has occurred. Dickerson v. Napolitano, 604 F.3d 732, 741-42 (2d Cir. 2010); id. 604 F. 2d at 742 ("In such cases, the plaintiff is allowed to challenge a law that may be legitimately applied to his or her own expressive conduct if the law has the potential to infringe unconstitutionally on the expressive conduct of others."); see e.g. Forsyth County, Ga. v. Nationalist Movement, 505 U.S. 123, 129, 112 S. Ct. 2395, 120 L. Ed.2d 101 (1992) ("It is well established that in the area of freedom of expression an overbroad regulation may be subject to facial review and invalidation, even though its application in the case under consideration may be constitutionally unobjectionable."). Because Plaintiff has presented no plausible claim of a First Amendment freedom of expression violation imposed by the enforcement N.Y. Penal Law § 400.00, she lacks a basis to mount a facial constitutional vagueness challenge to this regulation. Any such claim is dismissed.

The Court thus turns to Plaintiff's as-applied vagueness challenge. Because Plaintiff

does not allege that N.Y. Penal Law § 400.00 is vague for lack of adequate notice of its

coverage, see Dickerson, 604 F.3d at 745-46, the Court examines whether she states a

viable claim based upon the lack of sufficient limits on the discretion of the officers who

enforce the statute.

> [A] statute . . . may be unconstitutionally vague "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732, 120 S. Ct. 2480, 147 L.Ed.2d 597 (2000).  To survive a vagueness challenge, a statute must "'provide [ ] explicit standards for those who apply it.'" [*Farrell v. Burke*, 449 F.3d 470, 492 (2d Cir. 2006)](quoting [*United States v. Nadi*, 996 F.2d 548, 550 (2d Cir. 1993)]; *see also* [*Kolender v. Lawson*, 461 U.S. 352, 358, 103 S. Ct. 1855, 75 L.Ed.2d 903 (1983)] (requiring that statutes contain "minimal guidelines to govern law enforcement" (internal quotation marks omitted)). But a law need not "achieve 'meticulous specificity,' which would come at the cost of 'flexibility and reasonable breadth.' " *Betancourt v. Bloomberg*, 448 F.3d 547, 552 (2d Cir. 2006)(quoting [*Grayned v. City of Rockford*, 408 U.S. 104, 110, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)].

> Moreover, a statute that provides what may be unconstitutionally "broad discretion" if subjected to a facial challenge may still be upheld as constitutional on an as-applied challenge if "the particular enforcement at issue [is] consistent with the 'core concerns' underlying the [statute]" such that "the enforcement did not 'represent an abuse of the discretion afforded'" under the statute. *Farrell*, 449 F.3d at 493 (quoting *Perez v. Hoblock*, 368 F.3d 166, 177 (2d Cir. 2004)).  Courts therefore look to see "if the statute's meaning has a clear core." *Id.* (citing *Smith v. Goguen*, 415 U.S. 566, 573, 577–78, 94 S. Ct. 1242, 39 L. Ed.2d 605 (1974)).

Dickerson, 604 F.3d at 747-48.

Although the provisions of N.Y. Penal Law § 400.00 required Judge Becker to

determine, *inter alia*, whether Plaintiff was "of good moral character," a standard not defined

by the statute, this requirement must be read in the context in which it appears. Penal Law §

400.00 contains several criterion for licensure that serve to inform the standard upon which

"good moral character" must be assessed.  Indeed, in the context of N.Y. Penal Law §

400.00(1) and its numerous criterion limiting pistol permits to individuals when no criminal or

mental health problems, the criteria of an applicant having a "good moral character" is clearly cabined by concerns for whether the applicant would present a potential risk to the safety and security of the public if granted a license to possess a pistol. When viewed in context, the "good moral character" requirement is not some esoteric standard devoid of parameters, but rather is a measure used to assess the suitability of the applicant to gain licensure to posses a potentially deadly weapon like a pistol. While the good moral character criteria is not defined with meticulous specificity, the standard contains the flexibility and reasonable breadth necessary to achieve the objective of N.Y. Penal Law Article 400.

Moreover, and perhaps most importantly, the determination of whether a pistol permit applicant is of good moral character is wholly consistent with the core concerns underlying N. Y. Penal Law § 400.00. As indicated above, the statute serves the important governmental interest of ensuring that only law-abiding, responsible citizens are allowed to possess a handgun and, thereby, provide for the safety and security of the public. "Because the enforcement at issue is consistent with the 'core concerns' underlying [Penal Law § 400.00 ], [the Court] conclude[s] that [Plaintiff's] as-applied vagueness challenge for lack of adequate standards for enforcement fails." <u>Dickerson</u>, 604 F.3d at 749.

### 5. Overbreadth Challenge

Plaintiff alleges in her Third Cause of Action that "Criminal Law [*sic*] § 400.00 governing pistol permits is unconstitutional as vague, over-broad and allowing arbitrary enforcement in its sections allowing denial of pistol permits 'for good cause', without any additional legislative guidelines to the licensing officer, and requiring 'good moral character',

37

an extremely subjective determination, of the applicant, also without any legislative guidance to the pistol licensing officer as to how to make a determination as to that criteria." Plaintiff seeks a Judgment enjoining Defendants Northrup and Cuomo from enforcing N.Y. Penal Law § 400.00 and declaring that N.Y. Penal Law § 400.00 is "unconstitutionally over-broad and vague." The Court fails to see the basis for any plausible constitutional overbreadth challenge to N.Y. Penal Law § 400.00 in her Complaint, and fails to find any viable constitutional overbreadth argument in Plaintiff's disjointed memorandum of law.

The Supreme Court "ha[s] not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); see Farrell v. Burke, 449 F.3d 470, 498-99 (2d Cir. 2006). "Because [Plaintiff] has not raised a [plausible] First Amendment challenge[16] and is 'a person to whom a statute may constitutionally be applied,' [she] 'will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court.'" Betancourt, 448 F.3d at 554 (quoting Parker v. Levy, 417 U.S. 733, 759, 94 S. Ct. 2547, 41 L.Ed.2d 439 (1974)). Any constitutional overbreadth challenge is dimissed.

### 6. Challenge to N.Y. CPLR Article 78

Plaintiff did not access N.Y. CPLR Article 78 in relation to the denial of her pistol permit application. Therefore, she lacks standing to challenge the procedure afforded by

---

[16]In the Fourth Cause of Action, Plaintiff alleges what appears to be a First Amendment retaliation claim against Judge Becker based upon alleged and in this arising from Plaintiff's criticism of the pistol permit process and handicap access to the Courthouse. However, this does not present a plausible claim that N.Y. Article 400 operates to infringe the First Amendment rights of anyone. Further, all claims against Judge Becker have been dismissed.

Article 78.  Any such claim, including the Seventh Cause of Action, is dismissed.

### 7.  Denial of Due Process

### A.  Procedural Due Process

Plaintiff appears to present a procedural due process claim arising from the pistol

permit process.  However, as indicated above, Plaintiff failed to access the appellate review

available under Article 78.  Further,

> because plaintiff was entitled to challenge the denial of his firearms license
> application in an Article 78 proceeding, plaintiff had available to [her] a meaningful
> post-deprivation remedy under state law. *See* [*O'Brien v. Keegan,* 87 N.Y.2d 436,
> 439, 639 N.Y.S.2d 1004, 663 N.E.2d 316 (N.Y. 1996)]; *see also* [*Gudema v. Nassau
> County*, 163 F.3d 717, 725 (2d Cir. 1998)](noting that an Article 78 proceeding is an
> adequate state-law remedy).  As such, plaintiff has failed to state a procedural due
> process claim.

Osterweil, 819 F. Supp.2d  at 89.

Moreover, any due process claim that Plaintiff may have arising from the denial of

her pistol permit application file would have been addressed had she filed an Article 78

proceeding challenging the FOIL denial, and any "injury" she claims she suffered by being

denied her file would have been cured had she filed an Article 78 proceeding challenging

the denial of her pistol permit application.  Plaintiff cannot reject the opportunity to

meaningful due process review and then come to this court seeking damages for what she

asserts is a due process violation.  Any procedural due process claim asserted in the

Complaint is dismissed.

### B.  Substantive Due Process

Plaintiff has also failed to alleged any facts forming the basis of a plausible

substantive due process claim. She has not asserted conduct by any defendant that is so

outrageously arbitrary as to constitute a gross abuse of governmental authority. <u>See</u> <u>Natale v. Town of Ridgefield</u>, 170 F.3d 258, 263 (2d Cir.1999) ("Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority[.]")(citation omitted).  While Plaintiff clearly disagrees with Judge Becker's decision to deny her a pistol permit, that disagreement is insufficient to form the basis of a substantive due process claim. <u>See</u> <u>Lowrance v. Achtyl</u>, 20 F.3d 529, 537 (2d Cir.1994)(Substantive due process prohibits the government from taking actions that are "arbitrary," "conscience-shocking," or "oppressive in a constitutional sense. "[I]ncorrect or ill-advised" government action is insufficient to give rise to a substantive due process violation.)(citations omitted); <u>see also</u> <u>SeaAir N.Y., Inc. v. City of N.Y.</u>, 250 F.3d 183, 187 (2d Cir. 2001)(To state a cognizable claim for a violation of substantive due process, a plaintiff must show that the government exercised power "'without any reasonable justification in the service of a legitimate governmental objective[.]'")(quoting <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). Accordingly, any substantive due process claim is dismissed.

### 8. Equal Protection Claim

Plaintiff brings a Fourteenth Amendment Equal Protection Clause claim arising from the fact that pistol permit applications in Delaware County are decided by a county judge and thus appealable via N.Y. CPLR Article 78 to the Appellate Division of the New York State Supreme Court, whereas in locales where pistol permit applications are decided by a police officials are brought first to the New York State Supreme Court and then, possibly, to the Appellate Division.  The claim must be dismissed.

As the Supreme Court has observed, "[t]he Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans*, 517 U.S. 620, 631, 116 S. Ct. 1620, 134 L. Ed.2d 855 (1996)(citations omitted). Accordingly, the Supreme Court has "attempted to reconcile the principle with the reality by stating that, if a law neither burdens a fundamental right nor targets a suspect class, [the court] will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Id.* (citation omitted); *see also Vacco v. Quill*, 521 U.S. 793, 799, 117 S. Ct. 2293, 138 L. Ed.2d 834 (1997) (holding that the Equal Protection Clause "embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly" (quotation omitted)).

Osterweil, 819 F. Supp.2d at 86.

New York Penal Law § 265.00(10) defines a licensing officer for purposes of Article 400 determinations and, therefore, dictates whether an appeal from a licensing officer's decision is brought to the Appellate Division of the New York State Supreme Court or to the New York State Supreme Court. This statute neither burdens the fundamental right of a law-abiding citizen to possess a handgun nor targets a suspect class. Rather, the procedure for appeal of an Article 400 adverse licensing determination is a function of, and bears a rational relationship to, the legitimate ends of New York in establishing a categorical review procedure for its courts throughout the State. Further, and as indicated above, Plaintiff did not access the review procedure available to her so she cannot allege a plausible claim that she suffered an injury because of the disparate review paths utilized throughout New York.

Still further, whether or not a dissatisfied applicant's Article 78 challenge begins in the Supreme Court or the Appellate Division, it would follow a common set of procedural laws and be adjudicated under identical legal standards. See generally N.Y. CPLR § 7804.

Thus, regardless of the particular level of the state court system in which the proceeding is commenced, the same procedural result would be obtained. The Complaint fails to plausibly explain how Plaintiff suffered some injury because, *if* she filed an Article 78 petition, she would have been denied an extra "layer" of appellate review compared to others living elsewhere in the State. Any Equal Protection claim is dismissed.

### 9. Conclusion - State Defendants' Motion

For the reasons discussed above, all claims against Judge Becker, Governor Cuomo, and the State of New York are dismissed.

### b. County Defendants' Motion

The County Defendants move to dismiss the claims against them, directing their arguments to each of the individual "Causes of Action" in the Complaint. Plaintiff responds to some of the arguments, but not all. For the reasons that follow, the County Defendants' motion is granted in its entirety.

### 1. First Cause of Action

The First Cause of Action asserts a claim under the ADA,[17] and seeks injunctive and equitable relief against the County Defendants in both their individual and official capacities. As indicated above, in the Second Circuit an individual cannot be held liable under the ADA. Thus, all claims in the First Cause of Action against the County Defendants in their individual capacities are dismissed with prejudice.

The remainder of the official capacity ADA claims and the claims for injunctive relief

---

[17]Although the header also mentions "Due Process" and "Plaintiff's Right of Access to Courts," none of the allegations supporting the First Cause of Action present claims under the Fourteenth or First Amendments.

must also be dismissed because the Complaint fails to present factual allegations sufficient to show an actionable denial of a public opportunity or benefit.  Title II of the ADA, which contains accessibility standards applicable to all public entities, states in relevant part that

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity . . . .

42 U.S.C. § 12132.

To establish a Title II ADA claim, a plaintiff must establish that (1) she is a "qualified individual with a disability," (2) that the defendants are subject to the ADA, and (3) that she was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or w[as] otherwise discriminated against by defendants, by reason of [her] disabilities."  Shomo v. City of New York, 579 F.3d 176, 185 (2d Cir. 2009) (quoting Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003)).

Plaintiff does not allege any material impediments to her ability to complete and submit her pistol license application.  In fact, Plaintiff admits that she was able to have her fingerprints taken, Compl ¶ 35, was able to complete and submit the permit application to the Pistol Clerk inside the Delaware County Courthouse, id. ¶ 23-39, 44-49, and, after her application was denied, returned to the Courthouse and the Delhi Village Police Building to "retrace her routes" during the permit process.  Id. ¶¶ 63-65.   While the allegations in the Complaint indicate that Plaintiff was annoyed that she had to repeatedly walk between buildings for purposes of being fingerprinted, and not let into a locked door in the rear of the Courthouse, mere discomfort or annoyance does not suffice to state a claim under the ADA.  See Woods v. City of Utica, 902 F. Supp. 2d 273, 282 (N.D.N.Y. 2012).  Because the

allegations in the Complaint indicate that Plaintiff could reasonably access the public opportunity or benefit in issue, the First Cause of action fails to state a § 12132 claim against the County Defendants.

Plaintiff also does not state a plausible ADA retaliation claim against the County Defendants. She argues that "the disabled Plaintiff was punished based on alleged complaints of Delaware County Clerk's office regarding Plaintiff alleged arguments guarding her access to the building where the County Clerk and Pistol Clerk's office are located." Pl. MOL, p. 3. The punishment to which she refers is the denial of her pistol permit application. Compl. ¶ 58. Because Plaintiff alleges that it was Judge Becker who denied her pistol permit application, and because there is no plausible basis upon which to conclude that any of the County Defendants had supervisory liability over Judge Becker or were legally responsible for his judicial determiantions, any claim alleging ADA retaliation against the County Defendants is dismissed.

### 2. Second Cause of Action

The Second Cause of Action asserts Section 1983 claims against four of the five County Defendants, Schaefer, Eisel, O'Dell, and Olsen. The claims must be dismissed because Plaintiff presents no plausible claims of a violation of the U.S. Constitution or any other federal law, and because the Complaint does not present a plausible basis for liability by the County Defendants.

The Second Cause of Action restates Plaintiff's three chief contentions: (1) N.Y. Penal Law § 400.00 is unconstitutional, (2) Judge Becker unfairly denied her pistol permit application and blocked her access to her file, and (3) various County Defendants

wrongfully denied her access to her application materials.  None are meritorious.

First, for the reasons discussed above, N.Y. Penal Law § 400.00 is neither constitutionally infirm nor operates to cause a constitutional violation.

Second, assuming arguendo that Judge Becker unfairly denied Plaintiff's pistol permit application and blocked her access to her file, the Complaint contains no plausible factual allegations indicating that any of the County Defendants had any personal involvement in, or oversight responsibility for, any of the actions taken by Judge Becker. See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir.1995) (Personal involvement for purposes of Section 1983 can be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . .  by failing to act on information indicating that unconstitutional acts were occurring. ); see also Livecchi v. City of Geneva,  2014 WL 4245990, at *4 (W.D.N.Y. Aug. 26, 2014).[18]   Nothing

---

[18]As noted by the Western District:

Following the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1948, 173 L. Ed.2d 868 (2009), there is some disagreement among district courts in this Circuit as to whether all of the foregoing "*Colon* factors" still apply. *See, e.g., Dilworth v. Goldberg*, 2011 WL 3501869 at * 17 (2d Cir. Jul. 28, 2011)( "*Iqbal* has caused some courts to question whether all five of the personal involvement categories survive that decision.") (collecting cases).

Livecchi,  2014 WL 4245990, at *4.

As did the Western District, this Court concludes that because is unclear whether *Iqbal* overrules or limits *Colon*, and in the absence of contrary direction from the Second Circuit, the Court will continue to apply (continued...)

in the Complaint suggests that any of the County Defendants had any substantive role in pistol permit applications or in Judge Becker's decision to deny Plaintiff her file, or served in a supervisory capacity over Judge Becker.

Third, the Complaint contains no plausible allegations indicating that any of the County Defendants caused, or contributed to, the "denial" of Plaintiff's access to her pistol permit application materials. Although Plaintiff alleges that "Individual Defendants herein are public officials who were supposed to establish proper policies for access to records by individuals whose pistol permits were denied by the pistol licensing officer," Compl. ¶ 95, access to such files is controlled by the dictates of New York's FOIL and/or CPLR Article 78. There are no plausible allegations that any of the individual County Defendants had policymaking authority for purposes of either of these two state statutory provisions, or for purposes of implementing alternative means of access to court files. See Walker v. City of New York, 974 F. 2d 293, 296 (2d Cir. 1992)(A "policymaker" is an official "who possesses final authority to establish municipal policy." The determination of whether a particular person is a "policymaker" is based on the applicable law that organizes the hierarchy of the municipality or organization in question.). Moreover, Plaintiff abandoned her right to seek review of the County's FOIL determination (made by James Eisel, a non-party to this lawsuit), and to obtain a copy of her file through a Article 78 proceeding. Plaintiff's Second Cause of Action against the County Defendants is therefore dismissed.

---

[18](...continued)
those factors. Id. (citations omitted).

### 3. Third Cause of Action

The Third Cause of Action presents constitutional challenges against New York's pistol licensing statute. For the reasons discussed above, there is no merit to Plaintiff's claims. Further, none of the County Defendants are proper defendants on these claims. See, e.g., Diamond v. Charles, 476 U.S. 54, 64, 106 S. Ct. 1697, 1704, 90 L. Ed.2d 48 (1986)(When a plaintiff mounts a constitutional challenge against a particular state statute, the proper defendant is typically the state official charged with enforcing the statute.). Accordingly, the Third Cause of Action is dismissed with prejudice against all County Defendants.

### 4. Fourth Cause of Action

The Fourth Cause of Action references discrimination for gender, age, and disability as well as First Amendment retaliation. None of its factual allegations form a plausible claim against any of the County Defendants under any of the referenced bases. Only the First Amendment retaliation theory is referenced in the Complaint's allegations, and the allegations of retaliatory behavior are exclusively by Judge Becker. See generally Compl., ¶¶ 112-115. Nothing in the Complaint suggests that any of the County Defendants had any role in perpetrating the alleged discrimination or retaliation,[19] served in a supervisory capacity over Judge Becker, or served as a policymaker relative to the alleged

---

[19] Indeed, Plaintiff asserts that although the individual County Defendants "are public officials who were supposed to establish proper policies for access to records by individuals whose pistol permits were denied by the pistol licensing officer," Compl. ¶ 95, they "appeared to be seized with fear of the powerful Defendant Becker and allowed usurpation of their duties by Defendant Becker while failing to establish any policies of access whatsoever, instead deferring to one individual to define those policies at his whim." Compl. ¶ 97.

conduct.  See Walker, 974 F. 2d at  296.  Any claim asserted against the County

Defendants in the Fourth Cause of Action is dismissed.

### 5.  Sixth Cause of Action

The Sixth Cause of Action contends that Penal Law § 400.00 is unconstitutional

under the Equal Protection Clause because the judicial proceedings challenging license

denials differ slightly between locations in which a state court judge acts as the licensing

officer, and in towns or counties in which a police official acts as the licensing officer.  For

the reasons discussed above, the claim lacks merit and therefore is dismissed.

### 6.  Seventh Cause of Action

The Seventh Cause of Action claims that the "arbitrary and capricious" standard

that state courts apply in Article 78 proceedings is unconstitutional in matters challenge

denials of pistol permit applications.  For the reasons discussed above, Plaintiff lacks

standing to assert this claim.  Further, the County Defendants are improper defendants on

such a claim because none had the authority to enforce the statute.  Therefore, the Seventh

Cause of Action is dismissed with prejudice as against all County Defendants.

### 7.  Eight Cause of Action

In the Eighth Cause of Action, Plaintiff contends that the denial of her pistol permit

application constituted a violation of her Second Amendment right, and that she was denied

a "due process right" to "seek redress" of her permit denial "and to have access to the file."

For the reasons discussed above, none of these claims have merit and, therefore, are

dismissed against all County Defendants.

### 8. Supplemental Cause of Action

In the Supplemental Cause of Action, Plaintiff brings a claim "under New York CPLR Article 78" seeking "to overturn Defendant Becker's letter decision of June 18, 2013 as arbitrary and capricious." Plaintiff asserts in her memorandum of law that she "withdraws her complaint under Article 78 against the County [Defendants]. Upon research, only Defendant Becker may be the named Respondent/Defendant in such a proceeding." Pl. MOL., p. 9.

Plaintiff is correct that the County Defendants are not proper defendants on this claim. The claim is dismissed with prejudice as to all County Defendants.

### 9. Conclusion - County Defendants' Motion

For the reasons discussed above, all claims against all County Defendants are dismissed.

### c. Motion to File Supplemental Complaint

Plaintiff's motion to file a supplement to her Complaint is denied as futile. The facts that Plaintiff felt afraid because of a law enforcement situation in her hometown, or that she provided a reference for a successful pistol permit applicant, would not change the outcome of any the determinations set forth here. Moreover, the Proposed Supplemental Complaint does not contain any causes of action, claims, or theories of liability that have not been dismissed by this Decision and Order. Accordingly, Plaintiff's motion is denied.

## IX. CONCLUSION

For the reasons set forth above, the State Defendants' motion (dkt. # 13) is GRANTED, the County Defendants' motion (dkt. # 17) is GRANTED, and Plaintiff's motion

to supplement the complaint (dkt. # 23) is DENIED.  All claims against all defendants are DISMISSED.  Because Plaintiff filed a proposed Supplemental Complaint after the dismissal motions were filed yet failed to remedy any of the deficiencies raised by the defendants in their motions, the Court presumes that Plaintiff lacks factual allegations sufficient to establish legally plausible claims.  Accordingly, all dismissals are WITH PREJUDICE.  Plaintiff's motion for an adjournment of the motion response deadline (dkt. # 21) is DENIED AS MOOT.  The Clerk of the Court may enter judgment in favor for all defendants  and close the file in this matter.

**IT IS SO ORDERED.**

Dated:September 22, 2014

Thomas J. McAvoy
Senior, U.S. District Judge