**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MARIA ARON,**

                **Plaintiff,**

            **3:13-CV-0883**

    **-against-**

**CARL F. BECKER, in his official capacity as the
pistol licensing officer of Delaware County, New
York, in his official administrative capacity as the
County Judge of Delaware County, and in his individual
capacity; CHRISTA SCHAFER, Clerk, Delaware
County Board of Supervisors, New York, in her official
and individual capacities; JOSEPH EISEL, Chairman,
Delaware County Board of Supervisors, New York, in
his official and individual capacities; SHARON O'DELL,
County Clerk, Delaware County, New York, in her official
and individual capacities; MARILYN L. OLSEN, Pistol
Clerk, Delaware County, New York, in her official and
individual capacities; RICHARD NORTHRUP, in his
official capacity as Delaware County District Attorney;
STATE OF NEW YORK;  ANDREW CUOMO, in his
official capacity as Governor and Chief Executive Officer
of the State of New York,**

                **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION & ORDER**

**I.      INTRODUCTION**

On September 22, 2014, the Court granted the defendants' Rule 12 motions and

dismissed this action. See 09/22/14 Dec. & Ord., dkt. # 30.[1]  Presently before the Court is a motion by Defendants Christa Schaefer,[2] Joseph Eisel, Sharon O'Dell, and Marilyn Olsen (collectively, the "County Defendants")[3] seeking attorney's fees pursuant to 42 U.S.C. § 1988  and 42 U.S.C. § 12205.  Dkt. # 32.  Plaintiff, through counsel (dkt. # 37), and individually (dkt. # 39),[4] has opposed the motion.  Plaintiff's counsel has also moved for leave to withdraw as Plaintiff's counsel. Dkt. # 41  The Court has considered all of the submissions, and all prior proceedings, in reaching its decision.

## II.    STANDARD OF REVIEW

The longstanding "American Rule" is that parties are responsible for their own litigation costs, "including attorney's fees, regardless whether he wins or loses." Fox v. Vice, ––– U.S. ––––, ––––, 131 S. Ct. 2205, 2213, 180 L. Ed.2d 45 (2011); see Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247 (1975).   Pursuant to 42 U.S.C. § 1988, the Court may award attorney's fees to a prevailing defendant in a 42 U.S.C. § 1983 action "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978); see also Fox, 131 S. Ct. at 2213 (discussing Christiansburg).   If a "plaintiff assert[s] both frivolous and non-frivolous claims," then a court may grant to a defendant only those fees "that the

---

[1]The Court assumes familiarity with this Decision and Order.

[2]The Complaint names this defendant as "Christa Schafer," but Defendants indicate that her last name is spelled "Schaefer."   The Court will use the Defendant's spelling.

[3]On the Rule 12 motion, the "County Defendants" were Schaefer, Eisel, O'Dell, Olsen, and Northrup. Defendants indicate that "Defendant Northrop is not a party to this motion, since the plaintiff's claims against him were in his official capacity only." Def. Mem. L., p. 4, n.1.

[4]Plaintiff asserts that she will wishes to discontinue her attorney's services and, instead, submit her own affidavit in opposition to motion for attorneys fees.

2

defendant would not have incurred but for the frivolous claims." Fox, 131 S. Ct. at 2211.

A prevailing defendant need not establish that the matter was brought in subjective bad faith to be entitled to attorney's fees, Christiansburg, 434 U.S. at 421; Carter v. Incorporated Village of Ocean Beach, 759 F.3d 159, 163 (2d Cir. 2014), but "such a showing provides an even stronger basis for the award." Edwards v. Huntington Union Free Sch. Dist., 957 F. Supp.2d 203, 215 (E.D.N.Y. 2013)(internal quotations, alterations & citations omitted). In addition, attorney's fees can be awarded if the plaintiff continued to litigate a claim after it became clear that the claim was frivolous, unreasonable, or groundless. See LeBlanc–Sternberg v. Fletcher, 143 F.3d 765, 770 (2d Cir.1998).

As the Court explained in Christiansburg, in enacting § 1988, Congress sought to "protect defendants from burdensome litigation having no legal or factual basis." Christiansburg, 434 U.S. at 420. Nevertheless, it must be recognized that "it is very rare that victorious defendants in civil rights cases will recover attorneys' fees." Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 178 (2d Cir. 2006). Further, "in applying the standard for an award of attorney's fees to prevailing defendants, courts must take care not to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, [her] action must have been unreasonable or without foundation." Edwards, 957 F. Supp.2d at 215.

The fee shifting provision under 42 U.S.C. § 12205 of the Americans With Disabilities Act ("ADA") is similar to that under 42 U.S.C. § 1988. See Parker v. Sony Pictures Entm't Inc., 260 F.3d 100, 111 (2d Cir.2001). Accordingly, in its discretion, the Court may award the prevailing party attorney's fees and costs in an ADA action if the claims were "frivolous, groundless, or ... the plaintiff continued to litigate after it clearly became so." Id.

3

**III. DISCUSSION - ATTORNEY'S FEES**

The genesis of this case is Plaintiff's unsuccessful attempt to obtain a pistol license. Plaintiff was frustrated by the process which required her to go three times, while on crutches, to the Delhi Village Police Department's second-floor office to be fingerprinted. See generally Compl., dkt. #1; Pl. Opp., dkt. # 39, p. 2. Plaintiff's pistol license application was denied by Judge Becker. She felt the denial was wrong, in violation of her Second Amendment right to bear arms, and should be reviewed by another court. See generally Compl. Plaintiff also viewed the actions by the County Clerk's office employees as "harassment" imparted at the direction of Judge Becker. See generally Neroni Affirm.[5]

Regardless of the role that Judge Becker might have had in the underlying situation, the current motion is relative only to the claims against the County Defendants. They seek an award of attorney's fees for defending against Plaintiff's claims which, they contend, were meritless and "should never have been brought against them in the first place." Def. MOL, dkt. # 32, p. 4. Plaintiff's counsel argues, *inter alia*, that "[t]his lawsuit was brought in good faith, based on diligent research and factual investigation, in view of apparent and

---

[5]Attorney Neroni spends a large portion of her affirmation arguing that Judge Becker, and non-defendant Delaware County Court Clerk Kelly Sanfilippo, were behind the actions that spurned this lawsuit, and characterizes the County Defendants' actions as harassment. See e.g. Neroni Aff. ¶ 23 ("It very clearly seemed like Maria Aron was intentionally harassed by County Defendants, and the only reason I see why she was harassed and blocked access to the file is because Defendant Becker ordered the County Defendants not to give her such access after he was notified by Kelly Sanfilippo who she hired as an attorney."); ¶ 23 ("It very clearly seemed like Maria Aron was intentionally harassed by County Defendants, and the only reason I see why she was harassed and blocked access to the file is because Defendant Becker ordered the County Defendants not to give her such access after he was notified by Kelly Sanfilippo who she hired as an attorney."); ¶ 26 ("It is clear that County Defendants knew that it was not my crusade against Defendant Becker, but apparently Defendant Becker's crusade against me which is why Defendant Becker ordered County Defendants Kelly Sanfilippo [*sic*], Marilyn Olsen and Sharon O'Dell not to give access to Maria Aron's file as soon as Kelly Sanfilippo notified Defendant Becker that I was retained to challenge his determination."). Because Sanfillippo is not a defendant in this action, and because Judge Becker is not a movant on this motion, whether they were moving forces behind the County Defendants' actions is irrelevant to whether the claims against the County Defendants warrant an award of attorney's fees.

multiple constitutional injuries to the Plaintiff inflicted by Defendant Becker and County Defendants . . . ." Neroni 10/24/14 Affirm., dkt, # 37-2, ¶ 39.  Counsel contends that *she* had a justifiable basis to bring the action on behalf of "an elderly and disabled individual who was denied (1) her right under the 2nd Amendment, and (2) her right of access to her file under the Due Process Clause of the 14th Amendment." Pl. MOL, p. 2.  Counsel also argues that an award of attorney's fees against Plaintiff would be an "unconstitutional infringement upon Plaintiff's 1st Amendment rights based on Plaintiff's viewpoint and subject matter, and based on her opinions on matters of public concern." Pl. MOL p. 4. Plaintiff herself argues that she was only seeking to obtain a pistol license, that she felt the license denial was "unjustified," and that she merely followed her attorney's advice "to start this lawsuit in the hope that I could get the license."  Pl. Opp. dkt. # 39, pp. 1-2; see generally id.

The reasons and motives behind the lawsuit are not determinative. See Hughes v. Rowe, 449 U.S. 5, 14 (1980) (*per curiam*) (finding that a claim can be meritless "even though not brought in subjective bad faith"); Gerena-Valentin v. Koch, 739 F.2d 755, 761 (2d Cir. 1984) (stating that fees may be taxed "without regard to the state of mind of either the plaintiff or his or her counsel").  Rather, the Court must determine whether the claims against the County Defendants were frivolous, unreasonable, or without basis.

Plaintiff's counsel's argument that an award of attorney's fees against Plaintiff would be an "unconstitutional infringement upon Plaintiff's 1st Amendment rights" is without merit. A plaintiff's right to access the courts is not infringed by an award of attorney's fees; it is only the financial burden of that exercise that is shifted when a plaintiff exercises that right by bringing frivolous, unreasonable, and/or baseless claims.  Moreover, to accept this

5

argument would be tantamount to finding that all frivolous, baseless, and unsupported legal claims could never be the basis of an attorney's fees award because all plaintiff's have a First Amendment right to access the courts and present their grievances.

### a. First Cause of Action

The First Cause of Action, brought against Defendants O'Dell, Olsen, Becker and Eisel in their individual and official capacities, alleged ADA "denial of benefits" and retaliation claims. The law in the Second Circuit is clear that individuals cannot be liable under the ADA. Plaintiff's counsel does not challenge this proposition. Thus, to the extent that the Complaint asserts ADA claims against O'Dell, Olsen, and Eisel in their individual capacities, it is frivolous.

Plaintiff's counsel argues, however, that the County Defendants were not "prevailing parties" on the ADA claims because the Court "ignored the claim against County Defendants in their official capacities under the ADA." Pl. MOL, dkt. # 37, p. 5;[6] see also Neroni Affirm., ¶ 37 ("[T]here was no basis for dismissal of the ADA claim because it was allegedly only brought against individual County Defendants because the caption clearly said that the ADA claim was brought against the County Defendants without specification that it was brought only in their individual capacities."). How Counsel can assert that the

_____

[6]Counsel argues:

The court dismissed the claim under ADA against individual County Defendants because "in the Second Circuit an individual cannot be held liable under the ADA", Dkt. 30 p. 42. The court acknowledged that County Defendants were sued in both official and individual capacities, *but ignored the claim against County Defendants in their official capacities under the ADA*, which was obviously recognized in the 2nd Circuit. Therefore, the ADA claim was [] incorrectly dismissed as to County Defendants sued in their official capacity . . . . Thus, County Defendants cannot be deemed "prevailing defendants" for purposes of being entitled to attorney fees under . . . 42 U.S.C. § 12205.

Pl. MOL, dkt. # 37, pp. 4-5 (emphasis added).

Court "ignored" the official capacity ADA claims is beyond comprehension because the

Decision and Order provided a full review of the sufficiency of the official-capacity ADA

claims against the County Defendants.  See 09/22/14 Dec. & Ord., dkt. # 30, pp. 42-44. [7]

---

[7]This provided:

The First Cause of Action asserts a claim under the ADA, and seeks injunctive and equitable relief against the County Defendants in both their individual and official capacities.  As indicated above, in the Second Circuit an individual cannot be held liable under the ADA.  Thus, all claims in the First Cause of Action against the County Defendants in their individual capacities are dismissed with prejudice.

*The remainder of the official capacity ADA claims* and the claims for injunctive relief must also be dismissed because the Complaint fails to present factual allegations sufficient to show an actionable denial of a public opportunity or benefit.  Title II of the ADA, which contains accessibility standards applicable to all public entities, states in relevant part that

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity . . . .

42 U.S.C. § 12132.

To establish a Title II ADA claim, a plaintiff must establish that (1) she is a "qualified individual with a disability," (2) that the defendants are subject to the ADA, and (3) that she was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or w[as] otherwise discriminated against by defendants, by reason of [her] disabilities."  Shomo v. City of New York, 579 F.3d 176, 185 (2d Cir. 2009) (quoting Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003)).

Plaintiff does not allege any material impediments to her ability to complete and submit her pistol license application.  In fact, Plaintiff admits that she was able to have her fingerprints taken, Compl ¶ 35, was able to complete and submit the permit application to the Pistol Clerk inside the Delaware County Courthouse, id. ¶ 23-39, 44-49, and, after her application was denied, returned to the Courthouse and the Delhi Village Police Building to "retrace her routes" during the permit process. Id. ¶¶ 63-65.   While the allegations in the Complaint indicate that Plaintiff was annoyed that she had to repeatedly walk between buildings for purposes of being fingerprinted, and not let into a locked door in the rear of the Courthouse, mere discomfort or annoyance does not suffice to state a claim under the ADA.  See Woods v. City of Utica, 902 F. Supp. 2d 273, 282 (N.D.N.Y. 2012).  Because the allegations in the Complaint indicate that Plaintiff could reasonably access the public opportunity or  benefit in issue, the First Cause of action fails to state a § 12132 claim against the County Defendants.

Plaintiff also does not state a plausible ADA retaliation claim against the County Defendants.  She argues that "the disabled Plaintiff was punished based on alleged complaints of Delaware County Clerk's office regarding Plaintiff alleged arguments guarding her access to the building where the County Clerk and Pistol Clerk's office are located."  Pl. MOL, p. 3.  The punishment to which she refers is the denial of her pistol permit application.  Compl. ¶ 58.  Because Plaintiff alleges that it was Judge Becker who denied her pistol permit application, and because there is no plausible basis upon

(continued...)

The Court can only conclude that in making the argument that the Court "ignored the claim against County Defendants in their official capacities under the ADA," Counsel ignored the Court's Decision & Order in much the same manner that she ignored the well-established law in the Second Circuit excluding individual capacity ADA suits. Further, because an "official capacity" suit against a municipal employee could only be successful against the municipality, the ADA claims brought against Clerk's Office personnel O'Dell and Olsen, whether in their individual or official capacities, were frivolous, unreasonable, and without basis inasmuch as there was no indication that either had authority to act on behalf of Delaware County for ADA purposes. The Court further concludes that the ADA claims were brought against O'Dell and Olsen for vexatious reasons related to Plaintiff's sense that these Clerk's Office personnel harassed her, had some complicity in Judge Becker's decision to deny her license application, and/or played some role in the County's decision to deny her FOIL request. See fn. 5, *supra.* Therefore, an award of attorney's fees for defending these claims against O'Dell and Olsen is warranted. See Edwards, 957 F. Supp.2d at 215 ("[A] prevailing defendant may recover attorney's fees only when the suit is vexatious, frivolous, or brought to harass or embarrass defendant.").

However, inasmuch as Eisel was the Chairman of the Delaware County Board of Supervisors, it is possible that the official capacity ADA claims against him were intended to

---

[7](...continued)
which to conclude that any of the County Defendants had supervisory liability over Judge Becker or were legally responsible for his judicial determinations, any claim alleging ADA retaliation against the County Defendants is dismissed.

09/22/14 Dec. & Ord., dkt. # 30, pp. 42-44 (footnote omitted)(emphasis added).

be against Delaware County.  Thus, giving Plaintiff the benefit of the doubt on this issue,

and despite that the claims were factually implausible, the Court does not conclude that

they were frivolous.

### b. Second Cause of Action

The "Second Cause of Action" brought "[a]gainst all County Defendants with the

exception of Defendant Northrup," asserted claims under a myriad of theories essentially

asserting that (1) N.Y. Penal Law § 400.00 is unconstitutional, (2) Judge Becker unfairly

denied her pistol permit application and blocked her access to her file, and (3) various

County Defendants wrongfully denied her access to her application materials.  The Cause

of Action further alleges that the County Defendants were responsible based upon oversight

or supervisory liability.  The Court dismissed these claims because (1) N.Y. Penal Law §

400.00 was found to be neither constitutionally infirm nor operated to cause a constitutional

violation; (2) assuming, arguendo, that Judge Becker unfairly denied Plaintiff's pistol license

application and blocked her access to her file, the Complaint contained no plausible factual

allegations indicating that any of the County Defendants had any personal involvement in,

or oversight responsibility for, any of the actions taken by Judge Becker; (3) there were no

plausible allegations indicating that any of the County Defendants caused, or contributed to,

a wrongful denial of Plaintiff's access to her pistol license application materials beyond

being involved in a purported due process violation, which was covered by the Eighth

Cause of Action (discussed *infra*);[8] and (4) there were no plausible allegations that any of

---

[8]Defendant Schaefer was the Delaware County Board of Supervisor's Records Access Officer. Plaintiff's FOIL request for her pistol license application materials was forwarded to Schaefer, who responded with a letter indicating that "your request is denied as the documents cannot be obtained through the Freedom of Information Law [see, Pub. Off. Law §87 (2)(a)]." Compl. Ex. 3.  Schaefer's letter further indicated
(continued...)

9

the individual County Defendants had policymaking authority for purposes of either New York's FOIL and/or CPLR Article 78. Without a plausible basis to bring this Cause of Action against the County Defendants, the Court concludes that it was brought for vexatious reasons and, therefore, warrants an award of attorney's fees.

### c. Third Cause of Action

The Third Cause of Action, brought against all Defendants, contained constitutional vagueness and overbreadth challenges to N.Y. Penal Law § 400.00, New York's pistol licensing statute. Federal law holds that a proper defendant for a constitutional challenge to a state statute is a state official responsible for enforcing the statute. See, e.g., Diamond v.

---

[8](...continued)
that

> If you are dissatisfied with this decision, you may appeal the denial of your FOIL request within 30 business days, in accordance with Section 89(4)(a) of the Public Officers Law and NYS regulations at 18 NYCRR Part 340. Section 340.9(b) of the regulations states that an appeal must be mailed or submitted to the Appeals Officer, James Eisel, Sr. within 30 business days after the receipt of denial of access to the requested records. Pursuant to Public Officers Law Section 89(4), and 18 NYCRR Part 340.9(c)3 the Appeals Officer will issue a written decision within ten business days of receipt of a timely appeal.

Id.

Plaintiff then filed an administrative appeal of the denial of the FOIL request with Defendant Joseph Eisel, the Chairman of the Board of Supervisors of Delaware County. Compl. ¶ 76. The administrative appeal was denied by non-defendant James E. Eisel, Sr., Records Access Appeals Officer of the Delaware County Board of Supervisors. Id.; Compl. ex. 5.

Because Plaintiff felt she was being given a "run-around" by Delaware County officials, and due to her belief that she "was in continued danger from the wildlife and from the potential criminals who may target her home while she is defenseless," Plaintiff "decided not to wait until the decision of the Board of Supervisor[s] and to file a lawsuit in federal court" instead. Compl. ¶¶ 76-77.

Although Plaintiff apparently contends that Schaefer and non-defendant James E. Eisel, Sr.'s denials were wrongful, she did not appeal those denials further nor assert a wrongful FOIL denial claim in the Complaint. Thus, beyond these defendants' asserted involvement in a due process violation (addressed in the Eighth Cause of Action), Plaintiff's claims against these two defendants are, essentially, that she did not agree with the legal conclusions reached by Schaefer and non-defendant Eisel, and that Defendant Joseph Eisel must have had some involvement in these decisions. Because Plaintiff chose not to litigate the FOIL issue further, a claim based merely upon the denial of that request is, in this context, implausible.

10

<u>Charles</u>, 476 U.S. 54, 64, 106 S. Ct. 1697, 1704, 90 L. Ed.2d 48 (1986)(When a plaintiff

mounts a constitutional challenge against a particular state statute, the proper defendant is

typically the state official charged with enforcing the statute.).   Nothing in the Complaint

suggested that Defendants Schaefer, Eisel, O'Dell, or Olsen had enforcement

responsibilities.  It was frivolous and groundless to name them as defendants on these

constitutional challenges.

### d.    Fourth Cause of Action

The Fourth Cause of Action references discrimination for gender, age, and

disability as well as First Amendment retaliation.  None of the factual allegations in the

Complaint formed a plausible claim against any of the County Defendants under any of the

referenced bases.  Only the First Amendment retaliation theory is referenced in the

Complaint's allegations, and the allegations of retaliatory behavior are exclusively by Judge

Becker.  See generally Compl., ¶¶ 112-115.  Nothing in the Complaint suggested that any of

the County Defendants had any role in perpetrating the alleged discrimination or retaliation,[9]

served in a supervisory capacity over Judge Becker, or served as a policymaker relative to

the alleged conduct.  Any claim asserted against the County Defendants in the Fourth

Cause of Action was wholly without basis and, therefore, warrants an award of attorney's

fees.

---

[9] Indeed, Plaintiff asserted that although the individual County Defendants "are public officials who were supposed to establish proper policies for access to records by individuals whose pistol permits were denied by the pistol licensing officer," Compl. ¶ 95, they "appeared to be seized with fear of the powerful Defendant Becker and allowed usurpation of their duties by Defendant Becker while failing to establish any policies of access whatsoever, instead deferring to one individual to define those policies at his whim." Compl. ¶ 97.

11

### e.     Sixth Cause of Action[10]

The Sixth Cause of Action contended that Penal Law § 400.00 was unconstitutional under the Equal Protection Clause because the judicial proceedings challenging license denials differ slightly between locations in which a state court judge acts as the licensing officer, and in towns or counties in which a police official acts as the licensing officer.  The Court dismissed the claim because Plaintiff failed to allege facts supporting a plausible Equal Protection Clause violation.  More pertinent to the instant motion, the claim failed to allege any basis to conclude that any of the County Defendants had any enforcement capacity regarding New York law defining where and how challenges to license denials are brought.  This claim, against the County Defendants, was frivolous thereby warranting an award of attorney's fees.

### f.     Seventh Cause of Action

The Seventh Cause of Action contained a constitutional challenge against application of the "arbitrary and capricious" standards in state law Article 78 proceedings to matters involving pistol license applications.  Nothing in the Complaint suggested that the County Defendants had enforcement responsibility over either Penal Law § 400.00 or Article 78 proceedings.   It was frivolous and groundless to direct the Seventh Cause of Action against them, thus warranting attorney's fees.

### g.     Eighth Cause of Action

In the Eighth Cause of Action, Plaintiff contended that the denial of her pistol license application constituted a violation of her Second Amendment right, and that she was denied

---

[10]There is no "Fifth Cause of Action" in the Complaint.

a "due process right" to "seek redress" of her license denial "and to have access to the file."
The Court dismissed the claims because Plaintiff demonstrated no Second Amendment or
Due Process violation. However, while the claims were without merit, the aspect of the
claim contending that the County Defendants participated in the actions that denied Plaintiff
her pistol license application file were sufficient to form a non-frivolous denial of due
process claim. Attorney's fees will not be awarded for defending this claim.

### h. Supplemental Cause of Action

In the Supplemental Cause of Action, Plaintiff brought a claim "under New York
CPLR Article 78" seeking "to overturn Defendant Becker's letter decision of June 18, 2013
as arbitrary and capricious." Plaintiff asserted in her memorandum of law that she
"withdraws her complaint under Article 78 against the County [Defendants]. Upon research,
only Defendant Becker may be the named Respondent/Defendant in such a proceeding."
Pl. MOL., p. 9. Plaintiff was correct that the County Defendants were not proper
defendants on this claim, but because the claim was "withdrawn" after the County
Defendants filed their motion, they still had to defend against this frivolous claim. Attorney's
fees for the defending this claim are awarded.

### i. Amount

In calculating an award of attorney's fees, there is a two-step process. Capozzi v.
City of Albany, 565 F. Supp. 771, 774 (N.D.N.Y.1983). The first step in "determining the
amount of a reasonable fee is the number of hours reasonably expended on the litigation
multiplied by a reasonable hourly rate." Id. (quoting Hensley v. Eckerhart, 461 U.S. 424, 433
(1983)). This is known as fixing the "lodestar" amount. Capozzi, 565 F. Supp. at 774 (citing

13

Cohen v. West Haven Bd. of Police Comm'rs, 638 F.2d 496 (2d Cir.1980), City of Detroit v.

Grinnell Corp., 560 F.2d 1093, 1098 (2d Cir.1977)).  In the second step, "the court m ay

adjust the lodestar figure upward or downward." Capozzi, 565 F. Supp. at 774.   The upward

or downward adjustment "may be made to reflect subjective factors such as 'the risk and

complexity of the litigation and the quality of the representation.'" Id. (quoting Cohen, 638

F.2d at 505)).

Moreover, it must be remembered that while a defendant need not prevail on all

claims before being awarded attorneys' fees,

> the Supreme Court has . . . made clear [that a] defendant may only recover
> attorneys' fees that were incurred "because of, but only because of, a frivolous claim"
> pursued by the plaintiff.  Fox, 131 S. Ct. at 2215.  In other words, a prevailing
> defendant is permitted "to receive only the portion of his fees that he would not have
> paid but for the frivolous claim." Id.  For example, if "a defendant's attorney conducts
> a deposition on matters relevant to both a frivolous and a non-frivolous claim—and . .
> . [if] that the lawyer would have taken and committed the same time to this deposition
> even if the case had involved only the non-frivolous allegation ... [t]he defendant
> would have incurred the expense in any event; he has suffered no incremental harm
> from the frivolous claim," and, thus, is not entitled to those fees. Id.
>
> At bottom, the dispositive question in awarding attorneys' fees to a prevailing
> defendant "is not whether attorney costs at all relate to a non-frivolous claim, but
> whether the costs would have been incurred in the absence of the frivolous
> allegation." Id. at 2216.

Mawere v. Citco Fund Services, (USA) Inc., 2011 WL 6779319, at *2-*3 (S.D.N.Y. Sept. 16,

2011).

### 1. Reasonable Hourly Rate

"The reasonable hourly rate is the rate a paying client would be willing to pay.... [I]t

should also bear in mind that a reasonable, paying client wishes to spend the minimum

necessary to litigate the case effectively." Arbor Hill Concerned Citizens Neighborhood

Ass'n v. Cnty. of Albany, 522 F.3d 182, 190 (2d  Cir.2008).

14

> [T]he prevailing hourly rates in this District can reach up to $345 for the most experienced attorneys. <u>See</u>, <u>e.g.</u>, <u>Jimico Enters., Inc. v. Lehigh Gas Corp.</u>, No. 1:07–CV–0578, 2014 WL 1239030, at *7 (N.D.N.Y. Mar. 25, 2014) (awarding fees of $300 per hour for work performed by partners in action brought pursuant to, inter alia, the Petroleum Marketing Practices Act, 15 U.S.C. § 2805); <u>Aquent, LLC v. Atl. Energy Servs., Inc.</u>, No. 1:09–CV–0524, 2012 WL 1005082, at *3 (N.D.N.Y. Mar. 23, 2012) (applying rates of $135 to $345 per hour for attorneys); <u>Broadcast Music, Inc. v. DFK Entm't, LLC</u>, No. 1:10–cv–1393, 2012 WL 893470, at *7 (N.D.N.Y. Mar. 15, 2012) (applying a rate of $270 per hour for a partner). Moreover, the Second Circuit explicitly stated that "recent surveys in Northern District cases have indicated that, for a civil rights matter, [attorneys' fee rates] are higher than $210 [per hour]." <u>Lore v. City of Syracuse</u>, 670 F.3d 127, 175 (2d Cir. 2012).

<u>Neroni v. Coccoma</u>, Slip Copy, 2014 WL 3866307, at *3 (N.D.N.Y. Aug. 6, 2014).

Here, the County Defendants seek $145.00 an hour for the services of Frank W. Miller, Esq., an experienced attorney and a partner in the law firm representing the County Defendants; and $120.00 an hour for the services of Bryan Georgiady, Esq., a less experienced attorney and an associate in the law firm representing the County Defendants. The Court finds these hourly rates to be reasonable.

### 2. Reasonable Hours Expended

The County Defendants have provided itemized time sheets indicating that Attorney Miller spent 2.7 hours working on this case, and Attorney Georgiady spent 42.7 hours working on this case. Based upon each attorney's sought-after hourly rate and the amount of hours that each has accounted for, the County Defendants seek $5,515.50 in attorneys fees.

Rather than itemizing individual entries as excessive, the Court may make an "across-the-board reduction, or percentage cut, in the amount of hours." <u>T.S. Haulers, Inc. v. Cardinale</u>, 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011) (citing <u>Green v. City of New York</u>, 403 F. App'x 626, 630 (2d Cir. 2010)). Because: (1) the First Cause of Action against

15

Eisel in his official capacity, and the Eighth Cause of Action, were not frivolous; (2) defense

counsel represented the movants (Schaefer, Eisel, O'Dell, and Olsen) and Richard

Northrup, Delaware County District Attorney (Northrup is not movant here), and (3) much of

the legal work expended by defense counsel is not specific to a particular cause of action or

a particular defendant,[11] the Court will make an across-the-board percentage reduction of

fifty  percent (50%) excluding legal work that would have been performed even without the

frivolous, unreasonable, or groundless claims identified here.

### 3. Conclusion - Attorney's Fees

Thus, the County Defendants are entitled to attorney's fees in the amount of

$2,757.75  from Plaintiff.


## IV.    MOTION FOR LEAVE TO WITHDRAW AS COUNSEL

Inasmuch as all proceedings in this Court are concluded, Attorney Neroni's motion

for leave to withdraw as Plaintiff's counsel [dkt. # 41] is DENIED AS MOOT.


## V.    CONCLUSION

For the reasons set forth above, Defendants Christa Schaefer, Joseph Eisel, Sharon

O'Dell, and Marilyn Olsen's motion for attorney's fees [dkt. # 32] is GRANTED.  They are

awarded attorney's fees in the amount of $2,757.75 from Plaintiff.  Attorney Neroni's motion

for leave to withdraw as Plaintiff's counsel, dkt. # 41, is DENIED AS MOOT.

---

[11]Northup was named as a defendant on the Third Cause of Action (brought "[a]gainst all
Defendants"); the Sixth Cause of Action (brought against all Defendants); arguably on the Seventh Cause of
Action (the Cause of Action does not identify which Defendants it is brought against); and arguably on the
Supplemental Cause of Action (brought "[a]gainst Delaware County and Carl F. Becker.")

**IT IS SO ORDERED.**

Dated:November 10, 2014

Thomas J. McAvoy
Senior, U.S. District Judge